**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, and<br><br>PEOPLE OF THE STATE OF ILLINOIS, by their Attorney General, KWAME RAOUL,<br><br>Plaintiffs,<br><br>v.<br><br>B.E.S.T. GDR, LLC, an Illinois limited liability company, also doing business as PREMIUM HOME SERVICE, and<br><br>YOSEF BERNATH, individually, and as an owner, member, and/or manager of B.E.S.T. GDR, LLC,<br><br>Defendants. | **Case No. 1:26-cv-5415**<br><br>**COMPLAINT FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, CIVIL PENALTY JUDGMENTS, AND OTHER RELIEF** |

Plaintiffs, the United States of America, acting upon notification from the Federal Trade Commission ("FTC" or "Commission"), and the People of the State of Illinois, by their Attorney General, Kwame Raoul, for their Complaint, allege:

1. Plaintiff the United States of America brings this action for Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); the Rule on the Use of Consumer Reviews and Testimonials ("Reviews and Testimonials Rule"), 16 C.F.R. Part 465; and the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. §§ 6801–6809, §§ 6821–6827. Defendants' violations relate to the deceptive advertising, marketing, promotion, offering for sale, and sale of home repair services to consumers nationwide. For these violations, Plaintiff the United States of America seeks relief, including a permanent injunction, monetary relief, civil penalties, and other relief, pursuant to Sections 5(m)(1)(A), 13(b) and 19 of the FTC Act, 15 U.S.C.

§§ 45(m)(1)(A), 53(b), 57b; the Reviews and Testimonials Rule, 16 C.F.R. Part 465; and Section 521 of the GLB Act, 15 U.S.C. § 6821.

2.      Plaintiff the People of the State of Illinois, as part of the same case or controversy, also bring this action for Defendants' violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510.  The Attorney General of the State of Illinois brings this action under Section 7 of the Consumer Fraud Act, 815 ILCS 505/7, to obtain a permanent injunction, restitution, and civil penalties against Defendants.

## SUMMARY OF THE CASE

3.      Defendants operate a Chicago-area-based online business that falsely claims to be thousands of individual brick-and-mortar home repair businesses, each located near consumers around the country.  To lure consumers to call them, Defendants disguise themselves using thousands of individual online business profiles posing as local home repair companies.  Each profile features a physical address near consumers' homes, a phone number with a local area code, and often multiple positive consumer reviews and 5-star ratings.  The companies in these profiles are fake.  The company names are invented; the companies are not located at the listed addresses; and many of the positive reviews and 5-star ratings were not left by actual customers, but rather, fabricated by Defendants or those acting on their behalf.

4.      When consumers call these "local companies" at their listed local phone numbers, their calls are routed to customer service representatives who typically are located overseas. These representatives continue the deception that the companies are local and can address the consumers' home repair needs, and they attempt to sell consumers either a membership or a one-time fee for a service call, frequently collecting debit or credit card information when a sale is

2

made.  Then, Defendants typically outsource consumers' service requests to third-party service providers.  Many consumers have complained that such service providers are unqualified, provide subpar services, or fail to show up at all.  Consumers who visit the physical addresses listed in Defendants' business profiles discover, to their dismay, that no such businesses exist.

5.      Since at least 2018, Defendants have deceived well over 100,000 consumers into calling Defendants and purchasing their home repair services and memberships, and have taken tens of millions of dollars from consumers who thought they were supporting local small businesses and purchasing high-quality home repair services.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

7.      This Court has supplemental jurisdiction over the State of Illinois's claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2), (c)(1), (c)(2), and (d), 1395(a), and 15 U.S.C. § 53(b).

## PLAINTIFFS

9.      Plaintiff the United States of America brings this action upon notification from the FTC, pursuant to Section 16(a)(1) of the FTC Act, 15 U.S.C. § 56(a)(1).  The FTC is an agency of the United States Government created by the FTC Act.  15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Reviews and Testimonials Rule, 16 C.F.R. Part 465, which, among other things, prohibits fake or false consumer reviews, consumer testimonials, and celebrity testimonials.  The FTC also enforces Section 521(a) of the

GLB Act, 15 U.S.C. § 6821(a)(2), which prohibits "making a false, fictitious, or fraudulent statement or representation" "to obtain or attempt to obtain . . . customer information of a financial institution."

10. Plaintiff the State of Illinois is one of the fifty sovereign states of the United States. Attorney General Kwame Raoul is the duly elected and qualified Attorney General, acting for the Plaintiff State of Illinois, and brings this action in his official capacity for and on behalf of the People of the State of Illinois, pursuant to the provisions of the Illinois Consumer Fraud Act, 815 ILCS 505/7, and his common law authority as Attorney General to represent the People of the State of Illinois.

11. The Illinois Attorney General believes this action to be in the public interest of the citizens of the State of Illinois and brings this lawsuit pursuant to Section 7(a) of the Illinois Consumer Fraud Act, 815 ILCS 505/7(a).

**DEFENDANTS**

12. Defendant B.E.S.T. GDR, LLC, also doing business as Premium Home Service ("PHS"), is an Illinois limited liability company with its registered address at 9914 Derby Lane, Unit 100, Westchester, Illinois 60154, and its principal place of business at 6723 North Sacramento Avenue, Chicago, Illinois 60645. Defendant PHS also has transacted business using assumed business names, but it does not properly register all such names. For example, Defendant PHS has done business in the State of Illinois using at least the following business names that are not an assumed name under the Illinois Business Corporation Act of 1983, 805 ILCS 5/1 *et seq.*, or the Illinois Assumed Business Name Act, 805 ILCS 405/0.01 *et seq.*: Brewer Plumbing and Rodding; Horton Electric Service; Diaz Electrical Consulting; Valley Heating & Air; Levine Heating; Destiny Attic Insulation; Elmhurst Electrical; Apex Electrical;

4

Neuman Garage Doors; and Hardy Tuckpointing & Concrete. These business names are not registered with the Illinois Secretary of State as assumed business names. *See* Illinois Secretary of State Certificates of No Record, attached and incorporated hereto as Exhibit A. PHS transacts or has transacted business in this District and throughout the United States.

13. Defendant Yosef Bernath ("Bernath") is the Chief Executive Officer, owner, sole member, and manager of PHS, which as a small, closely held, single-member LLC, is Bernath's alter ego. At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices described in this Complaint. Among other things, Bernath devised Defendants' business listing marketing scheme; controls PHS's business operations and finances; is the signatory on corporate bank accounts; applies for and obtains merchant processing accounts; establishes marketing and advertising policies; manages domain name services; interviews, hires, directs, communicates with, and terminates employees; directs responses to law enforcement inquiries and consumer complaints; retains third-party service providers; signs corporate papers; and profits financially from the scheme. He and his family have submitted fake reviews of Defendants' services. Bernath, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

## COMMERCE

14. At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

15. Section 1(f) of the Illinois Consumer Fraud Act defines "trade" and "commerce" as follows:

5

The terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any . . . services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State.

815 ILCS 505/1(f).

### DEFENDANTS' BUSINESS ACTIVITIES

16. Since at least 2018, Defendants have engaged in a multi-state scheme to deceptively market and sell home repair services to consumers. PHS is an online business headquartered in the Chicago area, but Defendants pretend to be established, reputable, brick-and-mortar home repair companies located near consumers wherever they live, including in Illinois and other states across the country.

17. Defendants have created, or caused to be created, thousands of online business profiles for home repair companies over time. The business profiles typically list a fabricated home repair company with a made-up name that frequently is not registered. Defendants' business profiles contain local addresses, although neither Defendants nor their fabricated home repair companies are located at the listed addresses. The profiles also contain what appear to be local phone numbers that ring to representatives' phones mainly located outside the United States, not at the listed addresses. Using these profiles, Defendants deceive consumers and divert business from legitimate local home repair companies.

**A.      Defendants deceive consumers searching online for local businesses.**

18. Many consumers searching online for a local home repair company have come upon Defendants' thousands of fake business profiles. The company names that Defendants invent for these profiles typically include key home repair words or phrases, such as "electrical services," "plumbing," "heating and cooling," and "garage door repair." In some instances,

6

Defendants also use the names of cities, towns, and municipalities in their fake company names. When consumers search online for these home repair or geographic terms, Defendants' companies often will appear at or near the top of the search results because Defendants use search optimization techniques to promote higher placement.

19. Defendants have advertised hundreds of fake business names that falsely claimed to be located in states across the country, including Illinois, with phone numbers corresponding to local Illinois area codes and the area codes of various localities within other states.

20. When in need of home repair services, Defendants' customers have searched for companies with a physical presence near their residences and by using common home repair key terms like those listed above in Paragraph 18, both of which are likely to yield results that include business names Defendants use. For consumers who search for a service "near" a location, search engines like Google display a list of "Businesses" corresponding with the search. For consumers who search for businesses using only a home repair-related word or phrase, search engines like Google often display a similar list of "Businesses" that are "near" the device being used for the search. Each result includes a business name and type, a star rating, the age of the business, its location and phone number, and its hours.

21. For example, a Google search for "HVAC contractor near Buffalo Grove, IL" in February 2024 displayed search results that included one of Defendants' fabricated companies, "Levine Heating and Cooling," an "HVAC contractor" supposedly in Buffalo Grove, operating for "5+ years." Similarly, a Google search for "Electrician in Lockhart, FL" returns a listing for "Maxx Electrical," another one of Defendants' fabricated business entities. As shown below, Figures 1 and 2 depict representative Google search results for home repair services that include Defendants' fabricated business entities.



*Figure 1: Search results for "HVAC contractor near Buffalo Grove, IL"*
*(Captured on February 27, 2024)*



*Figure 2: Search results for "Electrician in Lockhart, FL"*
*(Captured on October 2, 2025)*

22.     If consumers click on a business search result, they can view a page with more details about the business, including the services the company offers, its service area, and phone

numbers with area codes corresponding to the company's purported local address. For example, a consumer who had clicked the hyperlink for "Levine Heating and Cooling" would have seen Defendants' business profile claiming that Levine Heating and Cooling was located at 1400 Busch Parkway, Buffalo Grove, Illinois 60089, offered services like "A/C system maintenance," served "Cook County" (where Buffalo Grove is located), and had a phone number with an 847-area code. The 847-area code covers the north and northwest suburbs of Chicago, including Buffalo Grove. Levine Heating and Cooling was also marked with a red "pin" on a map of the Buffalo Grove area in the map version of the search results. As shown below, Figure 3 depicts the Levine Heating and Cooling profile which is representative of Defendants' business profiles.



***Figure 3:*** *Business profile for "Levine Heating and Cooling"*
*(Captured on February 27, 2024)*

9

23.     Unbeknownst to consumers, Defendants' business profiles are fake.  The businesses themselves are not real, and they are not located at the addresses listed in the online profiles.  The business listed above, "Levine Heating and Cooling," is not a real local business located at 1400 Busch Parkway, Buffalo Grove, Illinois 60089; rather, it is a fictitious company created by Defendants that does not exist at that address.

24.     The same deception is used for the thousands of online business profiles for fabricated businesses that Defendants have created.  For example:

- The address Defendants list for "Union Electric Company," 1035 Lockwood Blvd, Oviedo, Florida 32765, is a building that contains only an Arby's Restaurant and Verizon store.

- The address Defendants list for "Golden Electrician Service," 112 S. Kentucky Ave, Lakeland, Florida 33801, is a local pub and restaurant.

- The address Defendants list for "Horton Electrical Service," 7015 New Territory Boulevard, Sugar Land, Texas 77479, is a donut shop.

- The address Defendants list for "Mason Heating & Air Conditioning," 106 E. Church Street, Woodstock, Illinois 60098, is actually the location of the Woodstock Fountain in the Woodstock town square.

- The address Defendants list for "Adani Electrical Services," 171 West Belvidere Road, Round Lake, Illinois 60073, is a local wine bar.

- The address Defendants list for "Maple Grove Electrical Repairs," 192 Northtown Drive NE, Blaine, Minnesota 55434, is a nonexistent address somewhere in the vicinity of the Northtown Mall shopping mall in Blaine, Minnesota.

- The address Defendants list for "Commercial Handyman Co," 9855 W. 74th Street, Eden Prairie, Minnesota 55344, is an indoor golf facility.

- The address Defendants list for "Merrick Garbage Collection," 16 N. Main Street, Pennington, New Jersey 08534, is a yarn and needlepoint boutique.

In most instances, the fabricated company names are not actually registered fictitious business names, certified assumed names, or registered d/b/a's belonging to Defendants.  They are simply made up.

10

**B.      Defendants deceive consumers with fake reviews and ratings.**

25.      To attract consumers, Defendants, or persons acting on their behalf, artificially boost their consumer reviews and ratings by fabricating profiles of people to pose as customers of Defendants' invented companies.  Defendants, their employees or immediate relatives, or other persons acting on their behalf, then author and post phony, positive consumer reviews and 5-star ratings that appear in the business profiles.  Defendants, or others acting on their behalf, have, in numerous instances, misappropriated the images of real people when fabricating the customer profiles to further the appearance that the positive consumer reviews and 5-star ratings are legitimate.

26.      For example, Defendants' business profile for "Adani Electrical Services" in Round Lake, Illinois, purports to have thirty-seven consumer reviews and an overall average star rating of 4.1 out of 5 stars.  For at least two of those reviews, Defendants, or others acting on their behalf, misappropriated the online images of a professor at a North Carolina university and a former executive at a McLean, Virginia-based professional services company.  Defendants used their images and fake names ("Rory Kendall" and "Betty Curtis") as alleged customers who authored 5-star reviews of the fabricated, Illinois-based electrical company.  Defendants' customer database has no record of any "Rory Kendall" or "Betty Curtis."

27.      Many of Defendants' purported "customers" post multiple positive consumer reviews and 5-star ratings for several of Defendants' fabricated companies—including for services supposedly received from business locations around the country and at approximately the same times.  For example, Defendants' business profile for "Ramseys Electric Company," supposedly located in Rogers, Minnesota, has a 5-star rating based on two positive consumer reviews.  One customer, "Lance Smith," allegedly wrote in or around January 2024:

11

Ramseys Electric Company is my first choice for electrical needs! Their team is highly skilled, punctual, and provides exceptional service. From troubleshooting to installations, they demonstrated expertise and professionalism. If you're seeking reliable electrical solutions, Ramseys Electric Company is the top choice for top-notch service.

28. The same Lance Smith also posted twenty-eight 5-star consumer reviews of *other* electrical contractors in different cities across the country in or around January 2024, several of which are remarkably similar. All twenty-nine consumer reviews pertain to companies invented by Defendants. Defendants' customer database has no record of any "Lance Smith."

29. The content of some of Lance Smith's reviews is set forth in the chart below:

| Defendants' Company and Purported Address | Consumer Review | Owner Response |
|---|---|---|
| Lexingtons Electric & AC Repairs<br><br>59 High Street, Medford, Massachusetts 02155 | Lexingtons Electric & AC Repairs is my go-to for electrical and AC needs! Their team is highly skilled, prompt, and provides exceptional service. From troubleshooting to repairs, they showed expertise and professionalism. If you're looking for reliable solutions, Lexingtons is the top choice for electrical and AC repairs. | Hi, thank you for your positive feedback. We're proud of our unique achievement and recognition in excellent customer experience. |
| Rosevilles Electric<br><br>103 Village Center Drive, North Oaks, Minnesota 55127 | Rosevilles Electric is top-notch! Their team is highly skilled, punctual, and delivers exceptional service. They efficiently addressed my electrical issues with precision, showcasing expertise and reliability. For anyone seeking trustworthy electrical solutions, I highly recommend Rosevilles Electric for their professional and reliable service. | Wow! Thanks for writing this great review. We truly appreciate it. |
| Roanokes Electrical & AC Repairs<br><br>214 N. US Highway 377, Argyle, Texas 76226 | Roanokes Electrical & AC Repairs is unparalleled in service! Their team is highly skilled, punctual, and provides top-notch service. From electrical issues to AC repairs, they demonstrated expertise and professionalism. If you're in need of reliable solutions, I highly recommend Roanokes Electrical & AC Repairs for their exceptional and trustworthy service. | We are grateful for your fantastic review James. We appreciate your support and we hope to see you again soon |

As shown in this chart, the reviews, all posted around the same time, use highly similar language (e.g., "highly skilled" appears in all three). Defendants, or others acting on their behalf, also responded to these reviews all around the same time. Notably, at least one of the responses thanks "James" for the review, not "Lance Smith," the purported author of the review.

30. Defendants use the same alleged customer names repeatedly. Purported consumer "katie bug," for example, posted similarly worded, positive reviews and 5-star ratings for several of Defendants' fabricated heating and cooling companies around January 2024, in four different cities, as set forth in the following chart:

| Defendants' Company | Company's Purported Location | Consumer Review |
|---|---|---|
| Franklins Heating and Air Conditioning Installations | Oak Creek, WI | My recent encounter with a heating and furnace repair service left me thoroughly impressed. The technicians exhibited a level of skill and knowledge that reassured me I made the right choice. They were not only prompt and efficient but also took the time to explain the repairs in a way that was easy to understand. The overall experience was exceptional. |
| Maple's Heating and Air Conditioning | Renton, WA | My recent experience with a heating and furnace repair company left me absolutely thrilled. The services were nothing short of exceptional, and I couldn't be happier with the outcome. From start to finish, it was a seamless and satisfying experience. |
| Forge Heating & Cooling Company | Woodinville, WA | I want to extend my gratitude to the heating and furnace repair company that recently assisted me. The technicians were not only prompt and efficient but also took the time to educate me on preventive measures to ensure the longevity of my heating system. |

| Arrowhead Heating & Cooling | Lynnwood, WA | My experience with a heating and furnace repair company was nothing short of amazing. The technicians displayed a high level of skill and expertise, and their commitment to ensuring customer satisfaction was evident throughout the service. |
|---|---|---|

31. Moreover, numerous of Defendants' positive consumer reviews and 5-star ratings appear to have originated from foreign countries, despite describing companies that purportedly provided home repair services in the United States. Dozens of email addresses used to post positive consumer reviews and 5-star ratings have been associated with the domains of foreign educational institutions. For example, ten accounts used e-mail addresses with the domain "@npu.ac.th," which is the domain of a university located in Thailand. Another ten accounts had e-mail addresses with the domain "@stu.kemu.ac.ke," which is the domain of a university located in Kenya. One of Defendants' fabricated companies, "Quakertown Vent and Duct Cleaning Co," which was purportedly located in Pennsylvania, had forty-two reviews associated with its business profile in December 2023. Sixteen (more than one-third) were posted from accounts using e-mail addresses with domains associated with Peru (.pe), Thailand (.th), and Kenya (.ke).

32. Defendants' fake positive consumer reviews and 5-star ratings far outnumber negative reviews and 1-star ratings, which artificially increases the average star rating. Without these fake positive consumer reviews and 5-star ratings, Defendants' invented businesses would be poorly rated because, in many instances, Defendants' real customers leave negative reviews about Defendants' services and low ratings. For example, a 1-star rating and negative consumer review posted about "Adani Electrical Services," stating that, "they never showed up [for a scheduled appointment]," and "I would not recommend these people ever to anyone" was buried

14

by fake 5-star ratings and positive consumer reviews. Another consumer observed after her experience with one of Defendants' fabricated companies that had a 4.6-star rating:

> I saw one other negative review about [the company] scheduling an appointment and not showing up. [The company] also had a couple other locations in nearby cities, where the reviews reporting no-shows were pushed to the bottom by many other five-star reviews. I wanted to leave a Google review so that my negative experience would be displayed at the top for others to see. But when I posted mine, a handful of new five-star reviews appeared at the top.

33. Defendants also offer a "Premium Home Service" app, which consumers can review and rate. As with Defendants' business profiles, the app store listings for Defendants' app contain numerous fabricated positive consumer reviews and 5-star ratings. For example, out of 142 app reviews appearing in the Google Play Store, sixty-one 5-star reviews originated from accounts that appear to have been created in the same month and that share similar characteristics. Twelve of these 5-star reviews appear to have originated from accounts that were created using the same Internet Protocol (IP) address.

34. Defendants admit that they use third parties, including search engine optimization providers, to write, provide, create, remove, delete, or change consumer reviews for posting on Google. Defendants further admit to knowing that "there were reviews created by some third parties which were not legitimately produced by customers."

35. Many consumers choose Defendants' businesses based in part on their artificial reviews and inflated ratings. One of Defendants' customers stated, for example, that he likely would not have done business with a company that had an overall rating of less than 4 out of 5 stars. Another consumer stated about one of Defendants' fabricated HVAC companies, "I read through several 5-star reviews, which gave me the impression that [the company] was a reputable company." Yet another explained that if he had known that the electrical contractor he

15

paid to service his home was completely fictitious, and that the address and reviews on Defendants' business profile were fake, he would never have called the company.

36. Even after receiving a Civil Investigative Demand from the Commission on or about February 6, 2024, Defendants continue to write, create, procure, or purchase fake positive consumer reviews and 5-star ratings about their businesses and services when they know that the reviewers do not exist, have no experience with their businesses or services, or that the reviewers' experiences with their businesses or services are being misrepresented.

**C.** **Defendants obtain or attempt to obtain consumer financial information under false pretenses.**

37. A consumer who finds one of Defendants' fake businesses online must call them to initiate potential business with them. When consumers call one of Defendants' over 7,600 telephone numbers in over 250 area codes across the United States, Defendants route the calls to their customer service representatives, who typically have been located outside of the United States.

38. Defendants' representatives use the name of the fabricated company the consumer is calling about throughout the call to further the misimpression that the consumer is contacting a real, local business. For example, when a Texas consumer searching for electrical repair services called the local telephone number from Defendants' online business profile for "Horton Electrical Service," the representative (who was located in a call center in the Philippines, not a business in Texas) answered as "Horton Electrical."

39. After consumers explain their service needs, Defendants' representatives state that a "technician" can be dispatched to address those needs, typically within a three-hour window that same day. In many instances, however, Defendants' representatives have no idea whether anyone is available during the appointment window.

16

40.     Defendants' representatives tell consumers that to have a "technician" dispatched, they must pay a service fee for the visit that typically ranges from $49 to $149.  This fee is separate from the charge for the service to be performed.  Alternatively, consumers can sign up for an annual membership program, which typically costs the same price as a single-visit service fee, but purports to include benefits, such as no service fees for additional service visits during the membership term.

41.     For those consumers who select the membership, Defendants' representatives typically collect payment information for the membership fee from the consumer during the initial call.  In numerous instances, Defendants require consumers who agree to purchase the membership to provide credit or debit card information and other identifying information, including names and e-mail addresses.  Defendants use this information to process payment for the membership fee.

**D.      Defendants provide consumers with subpar service.**

42.     Once a consumer has scheduled an appointment, Defendants often attempt to contact third-party service providers who work within the consumer's geographic area—not the businesses supposedly located at the addresses from Defendants' fake online business profiles.

43.     In many instances, no one is available or no one accepts the service call. Consumers repeatedly report that no one showed up during their scheduled appointment windows, with no communication from Defendants.  In some instances, Defendants dispatch people who are not licensed or who are otherwise unqualified to perform the specific repair job requested, and those consumers receive subpar service, incomplete or faulty repairs that are hazardous to the consumer, or no service at all.  In yet other instances, Defendants cannot locate

17

a service provider to perform the work for many days, leaving consumers waiting despite Defendants' promises of same-day service.

44. Defendants' deceptive business practices cost consumers considerable expense and wasted time. In instances where a service provider does arrive at a consumer's home, many of the service providers Defendants send arrive late or do not complete the requested repair. For example, a Washington consumer searched for a local HVAC contractor and found a fake business created by Defendants with fake reviews and an overall average rating of 4.6 stars. Despite paying for a membership and scheduling a same-day visit, the service provider did not arrive until the next day; only "tinkered" with the consumer's heat pump and told her she should call the original installer; and attempted to charge her an additional $99 on top of the $149 membership fee she had already paid.

45. Some consumers have had to pay other companies for repairs after Defendants' service providers failed to complete the work. For example, an Illinois consumer wanted to hire a local electrical contractor to repair the thermostat for his floor heating system. He contacted what he thought was an electrical company located near his home, but that was actually one of Defendants' fake electrical businesses. The service provider who came to fix the heating system charged the consumer $175 (in addition to Defendants' membership fee that the consumer had already paid) and performed only ten to fifteen minutes of work before claiming the repairs were completed. Shortly after the technician left, however, the consumer smelled something burning from the basement where the service provider had been working. The consumer discovered the basement wall where the floor heating system thermostat was located was hot to the touch and emitting smoke. The consumer had to hire another company that charged him hundreds of additional dollars to correctly complete the repairs.

46. In another example, a Minnesota consumer whose basement had flooded used Google to find what she believed to be a local, reputable plumbing business with positive reviews. The consumer called the phone number in one of Defendants' listings, which featured a nonexistent business and used a local Minnesota area code, and arranged with the representative that answered the phone for a home visit with a technician. The consumer paid over $370 to have a technician solve the flooding by supposedly fixing the consumer's sump pump, but the consumer's basement flooded again the following day. When the consumer called back, Defendants told the consumer that the plumber's visit was just "diagnostic" and not intended to solve the consumer's problem. The consumer paid a local and reputable plumber an additional $400 to solve the problem by replacing the sump pump.

47. Consumers frequently demand refunds from Defendants, but they have difficulty getting their money back. One Texas consumer, for example, sought a refund of his membership fee from Defendants after they failed to show up for an appointment. The consumer had contacted Horton Electrical Service—one of Defendants' fake companies—based on the Google business profile for the purported nearby business with a high star rating. Believing that the advertised local business was an established, above-board electrical contractor qualified to install the electrical outlet he wanted in his garage, the consumer signed up for a membership and set up an appointment for same-day service. Nobody ever came. The consumer fought to get a refund for the fee, but he was constantly denied. He then tried to visit Horton at its advertised location to talk to someone face-to-face about the difficulty getting a refund, but when he arrived at the company's purported local address, he was shocked to discover that it was not the location of an electrical contractor. Rather, it was a donut shop. Only after considerable effort researching PHS—including business records searches to discover that Defendants were behind Horton—and

19

over 20 emails exchanged with Defendants' overseas customer service representatives, was the consumer finally able to get his money back. In other instances, consumers initiate credit card chargebacks to get their money back.

48. Based on the facts and violations of law alleged in this Complaint, Plaintiffs have reason to believe that Defendants have violated, are violating, or are about to violate laws enforced by the Commission and the State of Illinois.

## VIOLATIONS OF THE FTC ACT

49. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

50. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### COUNT I
### Deceptive Claim to be Local Home Repair Businesses
### (By Plaintiff United States of America)

51. The United States of America realleges and incorporates by reference each allegation set forth in the foregoing paragraphs.

52. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of home repair services, Defendants represent, directly or indirectly, expressly or by implication, that they are a local home repair business operating from a specific physical address within or near the consumer's city, town, or neighborhood.

53. In fact, in numerous instances in which Defendants make the representations as described in Paragraph 52, Defendants are not a local home repair business operating from a specific physical address within or near the consumer's city, town, or neighborhood.

20

54.     Therefore, the making of the representations as described in Paragraph 52 constitutes a deceptive act or practice, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II
### Deceptive Claims Regarding Home Repair Services
### (By Plaintiff United States of America)

55.     The United States of America realleges and incorporates by reference each allegation set forth in the foregoing paragraphs.

56.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of home repair services, Defendants represent, directly or indirectly, expressly or by implication, that they will send a technician:

    a.     from the local home repair business that the consumer called to complete the requested home repair service; or

    b.     on a specific date and at a specified time.

57.     Defendants' representations as described in Paragraph 56 are false or misleading, or were not substantiated at the time the representations were made.

58.     Therefore, the making of the representations as described in Paragraph 56 constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III
### Fake Reviews
### (By Plaintiff United States of America)

59.     The United States of America realleges and incorporates by reference each allegation set forth in the foregoing paragraphs.

60. Through the means described above, Defendants have represented, directly or indirectly, expressly or by implication, that reviews of Defendants' businesses are truthful reviews by Defendants' actual customers.

61. In fact, in numerous instances in which Defendants have made the representations as described in Paragraph 60, the reviews of Defendants' businesses are not truthful reviews by Defendants' actual customers, but instead are fabricated by Defendants, or by others on Defendants' behalf, or are purchased by Defendants.

62. Therefore, the making of the representations as described in Paragraph 60 constitutes a deceptive act or practice, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF REVIEWS AND TESTIMONIALS RULE

63. The Commission promulgated the Reviews and Testimonials Rule pursuant to Section 18 of the FTC Act, 15 U.S.C. § 57a. The Reviews and Testimonials Rule became effective on October 21, 2024.

64. Defendants are a "business" as defined in the Reviews and Testimonials Rule, 16 C.F.R. § 465.1(a).

65. It is an unfair or deceptive act or practice and a violation of the Reviews and Testimonials Rule for a business to write, create, or sell a consumer review that materially misrepresents, expressly or by implication (a) that the reviewer exists; (b) that the reviewer used or otherwise had experience with the product, service, or business that is the subject of the review; or (c) the reviewer's experience with the product, service, or business that is the subject of the review. 16 C.F.R. § 465.2(a).

66.     It is also an unfair or deceptive act or practice and a violation of the Reviews and Testimonials Rule for a business to purchase a consumer review about the business or one of the products or services it sells, which the business knew or should have known materially misrepresented, expressly or by implication (a) that the reviewer exists; (b) that the reviewer used or otherwise had experience with the product, service, or business that is the subject of the review; or (c) the reviewer's experience with the product, service, or business that is the subject of the review.  16 C.F.R. § 465.2(b).

67.     It is also an unfair or deceptive act or practice and a violation of the Reviews and Testimonials Rule for a business to procure a consumer review from its officers, managers, employees, or agents, or any of their immediate relatives, for posting on a third-party platform or website, when the review is about the business or one of the products or services it sells, and when the business knew or should have known that the review materially misrepresented, expressly or by implication (a) that the reviewer exists; (b) that the reviewer used or otherwise had experience with the product, service, or business that is the subject of the review; or (c) the reviewer's experience with the product, service, or business that is the subject of the review.  16 C.F.R. § 465.2(c).

68.     Pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Reviews and Testimonials Rule constitutes an unfair or deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**<u>COUNT IV</u>**
**Reviews and Testimonials Rule Violations for Fake Reviews**
**(By Plaintiff United States of America)**

69.     The United States of America realleges and incorporates by reference each allegation set forth in the foregoing paragraphs.

70. In numerous instances, Defendants have (i) written, created, or sold a consumer review that materially misrepresents, expressly or by implication; (ii) purchased a consumer review that they knew or should have known materially misrepresents, expressly or by implication; or (iii) procured a consumer review from an officer, manager, employee, or agent, or any of their immediate relatives, for posting on a third-party platform or website, when the review is about the business or one of the services it sells, and when they knew or should have known that the review materially misrepresents, expressly or by implication:

a. that the reviewer exists;

b. that the reviewer used or otherwise had experience with Defendants' home repair services or business that is the subject of the review; or

c. the reviewer's experience with the product, service, or business that is the subject of the review.

71. Therefore, Defendants acts or practices as described in Paragraph 70 violate the Reviews and Testimonials Rule, 16 C.F.R. § 465.2(a), (b), or (c), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE GLB ACT

72. Section 521 of the GLB Act, 15 U.S.C. § 6821, became effective on November 12, 1999, and remains in full force and effect. Section 521(a)(2) of the GLB Act, 15 U.S.C. § 6821(a), prohibits any person from "obtain[ing] or attempt[ing] to obtain . . . customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution."

73. The GLB Act defines "customer" to mean "with respect to a financial institution any person (or authorized representative of a person) to whom the financial institution provides a

product or service, including that of acting as a fiduciary." 15 U.S.C. § 6827(1). The GLB Act defines "customer information of a financial institution" as "any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of a financial institution and is identified with the customer." 15 U.S.C. § 6827(2).

74. Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a), empowers the FTC to enforce Section 521 of the GLB Act "in the same manner and with the same power and authority as the [FTC] has under the Fair Debt Collection Practices Act [FDCPA] . . . to enforce compliance with such Act."

75. Section 814(a) of the FDCPA, in turn, makes a violation of the FDCPA an unfair or deceptive act or practice in violation of the FTC Act. 15 U.S.C. § 1692l(a). Section 814(a) of the FDCPA further provides that all of the functions and powers of the FTC under the FTC Act are available to the FTC to enforce compliance by any person with the FDCPA, including the power to enforce provisions of the FDCPA in the same manner as if the violation had been a violation of an FTC trade regulation rule.

76. Thus, pursuant to Section 522(a) of the GLB Act, the FTC may enforce Section 521 of the GLB Act in the same manner as if a violation of the GLB Act were a violation of an FTC trade regulation rule.

77. Section 19 of the FTC Act, 15 U.S.C. § 57b, authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from violations of the FTC trade regulation rules. Accordingly, Section 19 of the FTC Act, 15 U.S.C. § 57b, also authorizes this Court to grant such relief as the Court finds necessary to redress injury to

consumers resulting from violations of the GLB Act. This relief may include, and is not limited to, rescission or reformation of contract, and the refund of money or return of property.

**COUNT V**
**Use of False, Fictitious, or Fraudulent Statements to Obtain or Attempt to**
**Obtain Customer Information of a Financial Institution**
**(By Plaintiff United States of America)**

78. The United States of America realleges and incorporates by reference each allegation set forth in the foregoing paragraphs.

79. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of home repair services, Defendants make false, fictitious, or fraudulent statements or representations to customers of financial institutions to obtain or attempt to obtain customer information of a financial institution. The customer information of a financial institution that Defendants obtain or attempt to obtain includes consumers' bank account, credit card, and debit card numbers.

80. Defendants obtain or attempt to obtain the customer information of a financial institution by making false, fictitious, or fraudulent statements or representations that:

a. they are a local home repair business operating from a specific physical address within or near the consumer's city, town, or neighborhood;

b. they will send a technician from the local home repair business that the consumer called to complete the requested home repair service;

c. they will send a technician on a specific date and at a specified time; or

d. reviews of Defendants' businesses are truthful reviews by Defendants' actual customers.

81.     Therefore, Defendants' acts and practices as described in Paragraphs 79 and 80 violate Section 521 of the GLB Act, 15 U.S.C. § 6821, and constitute deceptive acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF ILLINOIS STATE LAW

### The Illinois Consumer Fraud Act

82.     Section 2 of the Consumer Fraud Act provides the following:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act,' approved August, 5, 1965 [815 ILCS 510/2], in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2.

83.     Section 2Q(a) of the Consumer Fraud Act provides the following:

No person, firm, corporation, partnership or association engaged in the business of making home improvements or repairs shall operate a business under a name other than the real names of the individuals conducting the business, an assumed corporate name under the Business Corporation Act of 1983 or an assumed business name under the Assumed Business Name Act or under the real names, assumed corporate, or assumed business names of an entity for whom the person, firm, corporation, partnership or association operates as a subcontractor, licensee or independent contractor.  Any person who knowingly violates this Section commits an unlawful practice within the meaning of this Act, and in addition to the relief available under Section 7 of this Act, may be prosecuted for the commission of a Class A misdemeanor.  A person who is convicted of a second or subsequent violation of this Section is guilty of a Class 4 felony.

815 ILCS 505/2Q(a).

84.     Section 10 of the Consumer Fraud Act provides, "In any action brought under the provisions of this Act, the Attorney General is entitled to recover costs for the use of this State." 815 ILCS 505/10.

## The Illinois Uniform Deceptive Trade Practices Act

85.     Section 2 of the Illinois Uniform Deceptive Trade Practices Act provides, in relevant part, the following:

(a)     A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:

(1)     passes off goods or services as those of another;

(2)     causes likelihood of confusion or of misunderstanding as the source sponsorship, approval, or certification of goods or services;

(3)     causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(4)     uses deceptive representations or designations of geographic origin in connection with goods or services;

* * *

(7)     represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another;

* * *

(9)     advertises goods or services with intent not to sell them as advertised[.]

* * *

(b)     In order to prevail in an action under this Act, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding.

815 ILCS 510/2(a), (b).

28

**<u>COUNT VI</u>**
**Violations of the Consumer Fraud Act**
**(By Plaintiff State of Illinois)**

86.     The Illinois Attorney General realleges and incorporates by reference each allegation set forth in the foregoing paragraphs.

87.     Defendants, in the course of trade or commerce, have in numerous instances engaged in conduct which constitutes unfair and deceptive acts or practices declared unlawful under Section 2 of the Consumer Fraud Act, 815 ILCS 505/2, by:

a.     Misrepresenting, directly or indirectly, expressly or by implication, with the intent that consumers rely on the misrepresentation, through advertisements, marketing, or offers for the sale of home repair services, that Defendants are a local home repair business operating from a specific physical address within or near the consumer's city, town, or neighborhood, when Defendants are not a local home repair business operating from a specific physical address within or near the consumer's city, town, or neighborhood;

b.     Representing, directly or indirectly, expressly or by implication, with the intent that consumers rely on the representation, through advertisements, marketing, or offers for the sale of home repair services, that Defendants will send a technician from the local home repair business that the consumer called to complete the requested home repair service, when Defendants do not send a technician from the local home repair business that the consumer called to complete the requested home repair service, or the representation was not substantiated at the time the representation was made;

c.     Representing, directly or indirectly, expressly or by implication, with the intent that consumers rely on the representation, through advertisements, marketing, or offers for the sale of home repair services, that Defendants will send a technician on a specific date and at a

29

specified time, when Defendants do not send a technician on a specific date and at a specified time, or the representation was not substantiated at the time the representation was made; and

d. Misrepresenting, directly or indirectly, expressly or by implication, with the intent that consumers rely on the misrepresentation, through advertisements, marketing, or offers for the sale of home repair services, that reviews of Defendants' businesses are truthful reviews by Defendants' actual customers, when reviews of Defendants' businesses are not truthful reviews by Defendants' actual customers, but instead are fabricated by Defendants or by others on Defendants' behalf, or are purchased by Defendants.

## COUNT VII
### Violations of the Consumer Fraud Act
### (By Plaintiff State of Illinois)

88. The Illinois Attorney General realleges and incorporates by reference each allegation set forth in the foregoing paragraphs.

89. Defendants, in the course of trade or commerce, have in numerous instances engaged in practices declared unlawful under Section 2Q(a) of the Consumer Fraud Act, 815 ILCS 505/2Q(a), by:

a. Engaging in business as "Brewer Plumbing and Rodding" in the State of Illinois when such name is not an assumed corporate name under the Business Corporation Act of 1983, 805 ILCS 5, or the Assumed Business Name Act, 805 ILCS 405;

b. Engaging in business as "Horton Electric Service" in the State of Illinois when such name is not an assumed corporate name under the Business Corporation Act of 1983, 805 ILCS 5, or the Assumed Business Name Act, 805 ILCS 405;

c.      Engaging in business as "Diaz Electrical Consulting" in the State of Illinois when such name is not an assumed corporate name under the Business Corporation Act of 1983, 805 ILCS 5, or the Assumed Business Name Act, 805 ILCS 405;

d.      Engaging in business as "Valley Heating & Air" in the State of Illinois when such name is not an assumed corporate name under the Business Corporation Act of 1983, 805 ILCS 5, or the Assumed Business Name Act, 805 ILCS 405;

e.      Engaging in business as "Levine Heating" in the State of Illinois when such name is not an assumed corporate name under the Business Corporation Act of 1983, 805 ILCS 5, or the Assumed Business Name Act, 805 ILCS 405;

f.      Engaging in business as "Destiny Attic Insulation" in the State of Illinois when such name is not an assumed corporate name under the Business Corporation Act of 1983, 805 ILCS 5, or the Assumed Business Name Act, 805 ILCS 405;

g.      Engaging in business as "Elmhurst Electrical" in the State of Illinois when such name is not an assumed corporate name under the Business Corporation Act of 1983, 805 ILCS 5, or the Assumed Business Name Act, 805 ILCS 405;

h.      Engaging in business as "Apex Electrical" in the State of Illinois when such name is not an assumed corporate name under the Business Corporation Act of 1983, 805 ILCS 5, or the Assumed Business Name Act, 805 ILCS 405;

i.      Engaging in business as "Neuman Garage Doors" in the State of Illinois when such name is not an assumed corporate name under the Business Corporation Act of 1983, 805 ILCS 5, or the Assumed Business Name Act, 805 ILCS 405; and

31

j.      Engaging in business as "Hardy Tuckpointing & Concrete" in the State of Illinois when such name is not an assumed corporate name under the Business Corporation Act of 1983, 805 ILCS 5, or the Assumed Business Name Act, 805 ILCS 405.

**COUNT VIII**
**Violations of the Illinois Uniform Deceptive Trade Practices Act**
**(By Plaintiff State of Illinois)**

90.      Defendants, in the course of a business, vocation, or occupation, have, in numerous instances, engaged in deceptive trade practices in violation of Section 2 of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, by:

a.      Misrepresenting that they are a local home repair business operating from a specific physical address within or near the consumer's city, town, or neighborhood, when in fact Defendants are not a local home repair business operating from a specific physical address within or near the consumer's city, town, or neighborhood, in violation of Sections 2(a)(1), (a)(2), (a)(3), and/or (a)(4) of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a)(1), (a)(2), (a)(3), and/or (a)(4);

b.      Misrepresenting that they will send a technician from the local home repair business that the consumer called to complete the requested home repair service, when in fact Defendants do not send a technician from the local home repair business that the consumer called to complete the requested home repair service, in violation of Sections 2(a)(1), (a)(2), (a)(3), (a)(4), and/or (a)(9), of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a)(1), (a)(2), (a)(3), (a)(4), and/or (a)(9); and

c.      Misrepresenting that reviews of Defendants' businesses are truthful reviews by Defendants' actual customers, when in fact the reviews of Defendants' businesses were not truthful, but instead were fabricated by Defendants, Defendants' employees, or

32

Defendants' agents, in violation of Sections 2(a)(1) and (a)(7) of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a)(1) and (a)(7).

91.     Violations of the Illinois Uniform Deceptive Trade Practices Act are unlawful acts under the Illinois Consumer Fraud Act, 815 ILCS 505/2.

## CONSUMER INJURY

92.     Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the Reviews and Testimonials Rule, the GLB Act, the Illinois Consumer Fraud Act, and the Illinois Uniform Deceptive Trade Practices Act.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## CIVIL PENALTIES

93.     Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), authorizes this Court to award civil penalties for each violation of the Reviews and Testimonials Rule and the GLB Act.

94.     Defendants violated the Reviews and Testimonials Rule and GLB Act with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

## PRAYER FOR RELIEF

Wherefore, the United States of America and the State of Illinois request that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act, the Reviews and Testimonials Rule, the GLB Act, the Illinois Consumer Fraud Act, and the Illinois Uniform Deceptive Trade Practices Act;

B.     Award monetary and other equitable relief within the Court's power to grant;

C.      Award such other relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the Illinois Consumer Fraud Act and the Illinois Uniform Deceptive Trade Practices Act, including, but not limited to, preliminary and permanent injunctive relief, rescission or reformation of contracts, restitution, and the disgorgement of ill-gotten monies;

D.      Award the Illinois Attorney General costs for the use of the State of Illinois, pursuant to Section 10 of the Consumer Fraud Act, 815 ILCS 505/10, or as otherwise authorized by law;

E.      Require Defendants to pay a civil penalty in the amount of $50,000 for each deceptive or unfair act or practice done in violation of the Illinois Consumer Fraud Act and an additional penalty of $50,000 for each violation the Court finds that Defendants committed with the intent to defraud, pursuant to 815 ILCS 505/7(b);

F.      Require Defendants to pay an additional civil penalty of $10,000 for each violation of the Illinois Consumer Fraud Act found to have been committed against a senior citizen, pursuant to 815 ILCS 505/7(c);

G.      Impose civil penalties for each violation of the Reviews and Testimonials Rule and the GLB Act; and

H.      Award any additional relief as the Court determines to be just and proper, including all equitable relief allowed pursuant to Section 7 of the Illinois Consumer Fraud Act, 815 ILCS 505/7(a).

Dated: May 11, 2026

34

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division
SARMAD M. KHOJASTEH
Deputy Assistant Attorney General
LISA K. HSIAO
Acting Director
PATRICK R. RUNKLE
Assistant Director

ANDREW S. BOUTROS
United States Attorney
Northern District of Illinois

*/s/ Cadesby B. Cooper*
CADESBY B. COOPER
COLIN W. TRUNDLE
Trial Attorneys
JAMES T. NELSON
Senior Trial Attorney
U.S. Department of Justice
Enforcement & Affirmative Litigation Branch
450 5th Street NW, Suite 6400-S
Washington, DC 20530
(202) 616-2376 (Nelson)
(202) 305-7032 (Cooper)
(202) 742-7112 (Trundle)
(202) 616-8962 (facsímile)
cadesby.b.cooper@usdoj.gov
colin.trundle@usdoj.gov
james.nelson2@usdoj.gov

**FOR PLAINTIFF STATE OF ILLINOIS:**

KWAME RAOUL
Attorney General

*/s/ Amanda Palmer*
AMANDA PALMER
DALE LICHTENSTEIN
THOMAS P. JAMES
JANICE PARKER
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(872) 272-0815 (telephone)
(312) 814-2593 (facsímile)
amanda.palmer@ilag.gov
dale.lichtenstein@ilag.gov
thomas.james@ilag.gov
janice.parker@ilag.gov

Attorneys for Plaintiff
STATE OF ILLINOIS

**OF COUNSEL:**

*/s/ William J. Hodor*
WILLIAM J. HODOR
KAREN D. DODGE
Federal Trade Commission
Midwest Region
230 South Dearborn Street, Room 3030
Chicago, Illinois 60604
(312) 960-5592 (telephone, Hodor)
(312) 960-5608 (telephone, Dodge)
whodor@ftc.gov
kdodge@ftc.gov

35