**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, and<br><br>PEOPLE OF THE STATE OF ILLINOIS, by their Attorney General, KWAME RAOUL,<br><br>     Plaintiff,<br><br>     v.<br><br>B.E.S.T. GDR, LLC, an Illinois limited liability company, also doing business as PREMIUM HOME SERVICE, and<br><br>YOSEF BERNATH, individually, and as an owner, member, and/or manager of B.E.S.T. GDR, LLC,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:26-cv-5415 |

**DEFENDANTS' MOTION TO DISMISS**
**ALL OR PART OF PLAINTIFFS' COMPLAINT**

Defendants B.E.S.T. GDR, LLC, an Illinois limited liability company, also doing business as PREMIUM HOME SERVICE ("PHS") and Yosef Bernath ("Bernath") (collectively "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), hereby move to dismiss all or part of the complaint filed by UNITED STATES OF AMERICA ("USA"), and PEOPLE OF THE STATE OF ILLINOIS, by their Attorney General, KWAME RAOUL ("Illinois" which together with the USA are sometimes collectively referred to as "Plaintiffs"). In the alternative, Defendants move, pursuant to Fed. R. Civ. P. 12(e) and 12(f), to strike certain allegations of the complaint and/or to require a more definite statement, as set forth below. In support of their motion, Defendants state as follows:

## I.    INTRODUCTION

The USA asserts that it is entitled to "monetary relief" and "civil penalties" pursuant to "Sections 5(m)(1)(A), 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 45(m)(1)(A), 53(b), 57b; the Reviews and Testimonials Rule, 16 C.F.R. Part 465; and Section 521 of the GLB Act, 15

1

U.S.C. § 6821." (ECF Doc. 1, ¶ 1.) The cited provisions do not authorize the recovery of "monetary relief" and "civil penalties" under Counts I–III. Additionally, the USA has not stated a valid claim for relief under Counts IV and V, and both counts should be dismissed.

The complaint consists of eight counts purporting to allege various violations of federal and state law, jointly asserted by the USA and Illinois, with a single combined prayer for relief, without adequately distinguishing the relief to which each of them is allegedly entitled.[1] The Prayer for Relief requests eight different categories of relief, only one of which specifies the party seeking such relief.[2] The remainder of the jointly-requested relief is broad and wide-ranging, including monetary and equitable relief; injunctive relief; rescission or reformation of contracts, restitution, and "the disgorgement of ill-gotten monies"; civil penalties; and "additional relief."

Monetary relief and civil penalties are not recoverable under Counts I-III as a matter of law following the Supreme Court's decision in *AMG Capital Mgmt., LLC v. FTC*, and the USA does not have standing to obtain such relief. To the extent such counts purport to seek such relief, that part of its claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Similarly unavailing is the USA's apparent attempt to circumvent *AMG Capital Mgmt., LLC v. FTC* via its purported claims for violations of the Reviews and Testimonials Rule (Count IV) and Section 521(a)(2) of the GLB Act (Count V). The Reviews and Testimonials Rule cannot be applied retroactively to conduct predating its effective date, Count V misreads

---

[1] Counts I through V seem to be on behalf of the USA (as each of them begins with the allegation the "USA realleges and incorporates each allegation set forth in the foregoing paragraphs" and the caption states "By Plaintiff United States of America"), and Counts VI through VIII seem to be on behalf of the Illinois (as each Counts VI and VII but not Count VIII begins with the allegation the "the Illinois Attorney General realleges and incorporates each allegation set forth in the foregoing paragraphs" and the caption states "By Plaintiff State of Illinois").

[2] See paragraph D, which requests an "Award [to] the Illinois Attorney General costs for the use of the State of Illinois, pursuant to Section 10 of the Consumer Fraud Act, 815 ILCS 505/10, or as otherwise authorized by law."

the plain text and original purpose of Section 521, which was enacted specifically to combat pretexting, e.g., information brokers who use deceptive pretexts to steal third-party consumers' confidential bank account data — not to capture ordinary electronic payment transactions between a merchant and its own customers. Both Counts IV and V should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  ARGUMENT

### A.  The Plain Text of Section 521(a)(2) Requires a Third-Party Victim Distinct from the Deceived Customer.

Count V purports to allege a violation of Section 521(a)(2) of the GLB Act, 15 U.S.C. § 6821(a)(2). Section 521(a)(2) prohibits any person from "obtain[ing] or attempt[ing] to obtain . . . customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution." Count V must be dismissed because the complaint does not — and cannot — allege that Defendants obtained or attempted to obtain customer information relating to a person other than the customer to whom the alleged misrepresentations were made.

The plain text of § 521(a)(2) requires a third-party victim distinct from the deceived customer. The statute contemplates a triangular relationship: (1) the deceiver, (2) the customer who is deceived, and (3) a third party — "another person" — whose information from a financial institution is the target of the deception. This structure is most naturally understood as a financial privacy statute aimed at "pretexting" — the practice of impersonating or deceiving a bank customer in order to obtain a third party's confidential financial account information. The phrase "relating to another person" is not surplusage; it is the operative limitation that defines the statute's reach.

The legislative history confirms the foregoing plain reading of the statute. According to the House Committee Report, Section 521 "addresses the practice of 'pretexting,' that is, the obtaining of personal confidential information from financial institutions under false pretenses.

3

This subtitle provides additional protections against pretexting violations by increasing the penalties for fraudulent information gathering and providing specific direction to the FTC to prosecute such fraudulent activities." House Committee Report 106-74, Part 3, June 15, 1999, at p. 109. [3]

The House Committee Report specifically notes that Section 521 is intended to punish "pretexters" — identified as "private detectives, information brokers, and lawyers, among others" — who use information from one customer "to wrongly obtain information about [other] targeted victims." *Id*. at p. 119. See also *id*. at p. 204. The statute was directed at those who "exploit[] the information explosion, using false identities or other deceptive pretexts to wrongly obtain information about targeted victims from financial institutions," by leveraging identifying data "from one source, such as a social security number or mother's maiden name, to gather information from a second source, such as an investment account, credit card limit, or savings balance."*Id.* The instant case does not come within the reach of Section 521 because it does not allege that Defendants were "pretexters" who obtained or attempted to obtain customer information of "another person."

Prior to *AMG Capital Mgmt., LLC v. FTC*, the FTC confined its actions to those authorized by plain meaning of Section 521. As part of "Operation Detect Pretext," the FTC filed suit in three U.S. District Courts specifically to halt the operations of information brokers who used false pretenses, fraudulent statements, or impersonation to illegally obtain consumers' confidential financial information — such as bank balances — and sell it. [4] The FTC described this practice as "pretexting" and confirmed that Congress enacted the Gramm-

---

[3] The complete 338-page report can be found at https://www.congress.gov/committee-report/106th-congress/house-report/74/3. The relevant excerpts are attached hereto as Exhibit A.

[4] https://www.ftc.gov/news-events/news/press-releases/2001/04/part-operation-detect-pretext-ftc-sues-halt-pretexting

Leach-Bliley Act specifically to prohibit obtaining, or attempting to obtain, another person's financial information by making false, fictitious, or fraudulent statements to financial institutions.[5] That is the conduct Section 521 was designed to address: not a merchant's receipt of a consumer's own credit card number as payment for services, but a the fraudulent extraction of a stranger's financial data from a financial institution that has no knowledge it is being deceived.

The FTC Commissioner's own testimony before Congress underscores this point. Commissioner Mozelle W. Thompson described "pretexting" as the practice by "information brokers" of "obtaining personal information under false pretenses," citing as the paradigmatic example "an investigator who obtains a bank account balance by posing as the account holder."[6] The Commissioner emphasized that "increasing numbers of high-tech private eyes, also known as 'information brokers,' are touting their ability to obtain surprisingly sensitive information" — and that the Web sites of certain companies implied they could retrieve this information legally, when "in fact . . . the companies can get this information only one way . . . through plain, old-fashioned lies, i.e., through pretexting." *Id*.

Critically, the Commissioner identified two distinct deceptive acts that could ground FTC enforcement action: first, "making misrepresentations to a financial institution to obtain confidential information for resale"; and second, "representing to customers that information will be obtained legally, when in fact it can be obtained only through actions that likely violate the FTCA." *Id*. at 5. The Commissioner specifically stated that the latter act "may also be a *deceptive* act affecting commerce." *Id.* That second deceptive act is what Section 521(a)(2) addresses. Section 521(a)(2) prohibits making a "false, fictitious, or fraudulent statement or

---

[5]     *Supra*, n. 4: "Congress enacted the Gramm-Leach-Bliley Act, which specifically prohibits obtaining, or attempting to obtain, another person's financial information by making false, fictitious or fraudulent statements to financial institutions."

[6]     See Exhibit B attached hereto, p. 1.

representation to a customer" - *e.g.* misrepresenting that such information could be legally obtained – in order to "obtain or attempt to obtain . . . customer information of a financial institution relating to another person." Section 521(a)(2) has no application to a home services company receiving a consumer's own credit card number in payment for a service call.

The USA has stretched Section 521(a)(2) beyond any defensible reading of its text or history. Count V alleges that the customer information Defendants obtain or attempt to obtain "includes consumers' bank account, credit card, and debit card numbers." (ECF Doc. 1 ¶ 79.) The complaint further alleges that Defendants obtain this information by making false representations to consumers — specifically, that Defendants are a local business, that they will dispatch a technician, and that their reviews are genuine. (ECF Doc. 1 ¶ 80.) In each instance alleged, Defendants purportedly made false statements to a consumer, and in response, that same consumer provided that same consumer's own credit or debit card information as payment for a service call or membership fee. (ECF Doc. 1 ¶ 41.)

This is not a case of pretexting. At no point does the complaint allege that Defendants deceived Consumer A in order to extract financial information belonging to Consumer B or any other identifiable third party. In every instance alleged, the financial institution's customer whose information was obtained is the very same person to whom Defendants allegedly made the misrepresentation. There is no "another person."

The USA's theory — that any merchant who uses deceptive sales practices to induce a consumer to pay by credit card has "obtain[ed] customer information of a financial institution relating to another person" — would convert every consumer fraud case into a GLB Act violation. That is not what Congress intended when it enacted Section 521 in direct response to information brokers impersonating bank customers to steal third parties' account balances. Congress enacted the GLB Act's anti-pretexting provisions after the FTC filed suit against Touch Tone Information Systems, Inc., specifically targeting information brokers selling third-

6

party financial data obtained through false pretenses.  The USA's post-*AMG Capital* effort to deploy the GLB Act as a broad vehicle for monetary relief in ordinary consumer fraud cases takes narrow, specific statutory language out of context and weaponizes it to circumvent the structural limits on FTC enforcement remedies that *AMG Capital* confirmed.

The requirement that the information sought must relate to "another person" is not a peripheral detail; it is the statutory predicate that separates § 521(a)(2)'s financial privacy violation from an ordinary fraud or deceptive practice allegation already covered by Counts I–III.  Because the complaint nowhere alleges that Defendants obtained or attempted to obtain any customer's financial information belonging to a third party distinct from the deceived consumer, Count V fails to state a claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### B.  Count IV Must Be Dismissed: The Reviews and Testimonials Rule Cannot Be Applied Retroactively.

The conduct alleged in Count IV — writing, creating, purchasing, or procuring fake consumer reviews — was allegedly completed in January 2024. (ECF Doc. 1 ¶¶ 27-30.)  At the time of the January 2024 reviews, the Reviews and Testimonials Rule did not exist.  The Rule did not become effective until October 21, 2024. (ECF Doc. 1 ¶ 63.)  Imposing liability and civil penalties under 15 U.S.C. § 45(m)(1)(A) for those pre-Rule acts would, for the first time, attach a specific regulatory prohibition — and substantial civil penalties — to conduct that was not subject to any such rule at the time it occurred. Applying the Rule to such conduct would be an impermissible retroactive application of law.

The presumption against retroactivity bars application of the Rule to January 2024 conduct, as well as any other conduct occurring prior to the Rule's effective date. [7] The Supreme

---

[7]  Without any details, the Complaint alleges that after February 2024, Defendants continued to create fake positive reviews.  (ECF Doc. 1 ¶ 36.)  Notably, it does not allege that any of such conduct occurred after October 21, 2024.   If Count IV is not dismissed entirely, the USA should be required to plead more specific facts under Fed.R.Civ.P. 12(e).

Court has long held that "the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place" is a deeply rooted canon of statutory and regulatory construction. *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265 (1994). A statute or regulation has an impermissible retroactive effect when it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280. Courts apply this principle to agency regulations as well as to statutes. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.").

The Reviews and Testimonials Rule contains no express retroactivity provision. Nothing in 16 C.F.R. Part 465 or in the FTC's promulgating release states that the Rule applies to conduct occurring before October 21, 2024. Where no such clear statement exists, courts in this Circuit and elsewhere refuse to apply new rules retroactively. *See Bowen,* 488 U.S. at 208. *See, e.g. Durable Mfg. Co. v. United States DOL,* 578 F.3d 497, 504 (7th Cir. 2009) (DOL's regulations pertaining to the labor certification process did not operate retroactively).

The Rule's civil penalty exposure makes retroactive application particularly prejudicial. The USA seeks civil penalties under Section 5(m)(1)(A) specifically predicated on violations of the Reviews and Testimonials Rule. Civil penalty liability is a form of heightened sanction that courts treat with particular caution in the retroactivity context. To impose such penalties for conduct occurring before the Rule was promulgated — let alone before it was effective — would be fundamentally unfair and inconsistent with due process principles underlying the retroactivity doctrine. *Cf. FCC v. Fox Television Stations, Inc.,* 567 U.S. 239, 253 (2012) (due process requires fair notice of what conduct is prohibited before a party can be held liable).

To the extent Count IV purports to state a claim based on conduct occurring before October 21, 2024 — which includes all of the January 2024 fake review conduct specifically pled in the complaint — it fails to state a claim upon which relief can be granted and should be dismissed under Fed. R. Civ. P. 12(b)(6). In the alternative, all allegations in Count IV directed at pre-October 21, 2024 conduct should be stricken pursuant to Fed. R. Civ. P. 12(f) as an improper application of an inapplicable legal standard. Additionally, if Count IV is not dismissed entirely, the USA should be required under Fed.R.Civ.P. 12(e) to plead that the alleged wrongful acts occurred after the Rule's effective date.

**C. Purported Claims for Monetary Relief Under Counts I–III Must Be Dismissed.**

Monetary relief is not available post-A*MG Capital Mgmt.* in connection with Counts I-III, as discussed further below. Accordingly, the USA independently lacks Article III standing to pursue such relief, and any claim for such relief should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction.

1. Post-*AMG Capital Mgmt.*, Monetary Relief Is Not Available Under Counts I–III.

Counts I, II, and III allege violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), arising from allegedly deceptive representations about Defendants'' status as a local business, their service delivery, and their consumer reviews. The Prayer for Relief asks this Court to "award monetary and other equitable relief within the Court's power to grant" and to impose civil penalties. The USA invokes Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, as authority for that monetary relief. Neither provision supports monetary relief here.

Section 13(b) does not authorize monetary relief. In *AMG Capital Mgmt., LLC v. FTC*, 593 U.S. 67 (2021),the Supreme Court held that Section 13(b)'s permanent injunction language does not authorize the FTC to obtain court-ordered monetary relief. The Court explained that the language and structure of § 13(b), taken as a whole, indicate that the words "permanent injunction" have a limited purpose — a purpose that does not extend to the grant of monetary

relief. *See AMG Capital*, 593 U.S. at 87.  Taken as a whole, § 13(b) focuses upon relief that is prospective, not retrospective. Accordingly, any claim by the USA for restitution, disgorgement, or any other equitable monetary relief under § 13(b) in connection with Counts I–III must be dismissed.

Section 19 is equally unavailable for Counts I–III.  Section 19 contains two separate enforcement pathways. Section 19(a)(1) authorizes the FTC to "commence a civil action" in federal district court for violation of "any rule" — except for an "interpretive rule" — that deals with unfair or deceptive acts or practices. 15 U.S.C. § 57b(a)(1). Section 19(a)(2) provides that a suit in federal district court may proceed for violations of 15 U.S.C. § 45(a) only after the FTC properly begins administrative proceedings under § 5(a) and issues "a final cease and desist order."

Counts I-III allege statutory violations of Section 5(a), not violations of any FTC-promulgated rule. They therefore fall under § 19(a)(2), not § 19(a)(1). Section 19 applies only where the FTC begins its § 5 process within three years of the underlying violation and seeks monetary relief within one year of any resulting final cease and desist order. The complaint does not allege — because it cannot — that the FTC commenced administrative proceedings under § 5 or issued a final cease and desist order against Defendants. Absent those prerequisites, § 19(a)(2) is simply unavailable as a vehicle for monetary relief on Counts I–III.

The *AMG Capital* Court confirmed this limitation, observing that Congress in §§ 5(l) and 19 gave district courts the authority to impose limited monetary penalties and to award monetary relief only in cases where the FTC has issued cease and desist orders — *i.e.*, where the Commission has engaged in administrative proceedings. That condition has not been met here. The Court further held that reading § 13(b) to authorize injunctive but not monetary relief produces a coherent enforcement scheme: the FTC may obtain monetary relief by first invoking

10

its administrative procedures and then § 19's redress provisions (which include limitations). The USA cannot sidestep those limitations by filing directly in federal court.

Civil penalties are likewise unavailable under Counts I–III. Section 5(m)(1)(A), 15 U.S.C. § 45(m)(1)(A), authorizes civil penalties for knowing violations of FTC rules or of final cease and desist orders. No rule is implicated by Counts I–III, and no cease and desist order exists. Civil penalties accordingly cannot be grounded in the § 5(a) claims set forth in Counts I–III.

2. The FTC Lacks Standing to Pursue Monetary Relief Under Counts I–III.

The "threshold question" is whether plaintiffs have standing to bring the claims they assert. *Taylor v. McCament*, 875 F.3d 849, 855 (7th Cir. 2017). Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018). Standing has three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Matushkina v. Nielsen*, 877 F.3d 289, 292–93 (7th Cir. 2017). Critically, "standing is not dispensed in gross." *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008). "A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis*, 554 U.S. at 734.

A plaintiff must demonstrate standing separately for each form of relief sought. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983). A plaintiff bears the burden of demonstrating standing to seek each form of relief. The fact that a plaintiff has standing to seek one form of relief does not mean that it has standing to seek another. *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 701 (N.D. Ill. 2020). Standing to seek injunctive or forward-looking relief — which may be available to

11

the USA— does not carry with it standing to seek retrospective monetary remedies. *Compare Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 890 (7th Cir. 2013) ("[A] plaintiff must demonstrate standing for each form of relief sought. A plaintiff may have standing to pursue damages but not injunctive relief, for example, depending on the circumstances.").

The USA has no statutory basis to recover monetary relief under Counts I-III, and absent any statutory basis, it cannot satisfy the injury-in-fact requirement with respect to monetary relief. The USA brings this action "upon notification from the Federal Trade Commission" and on behalf of consumers who were allegedly deceived. The monetary injury — payment by consumers for home repair services they did not receive as advertised — was suffered by private consumers, not by the United States government. The USA has not itself disbursed funds, been deprived of property, or suffered any financial harm traceable to Defendants' conduct. An entity seeking monetary relief must demonstrate a concrete, particularized financial injury to itself, not merely allege that third parties were harmed. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); "In order to have standing, a litigant must 'prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct and is likely to be redressed by a favorable judicial decision.'" *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691–92 (7th Cir. 2015). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion*, 594 U.S. at 423.

Because the USA has not itself suffered any concrete financial injury as a result of Defendants' alleged deception of consumers under Counts I–III, and it has no statutory authority to recover monetary damages, it lacks the requisite standing to pursue monetary relief.

12

### D.      The Prayer for Relief Is Fatally Ambiguous and Confusing as to the Relief Sought Between Plaintiffs.

The complaint is brought by two distinct plaintiffs — the USA and the State of Illinois — who have different legal claims, different statutory authorizations, and different available remedies. Yet the Prayer for Relief is presented as a single joint request, seeking remedies (including monetary judgment, civil penalties, and "disgorgement of ill-gotten monies") without specifying which plaintiff is entitled to which form of relief, with the sole exception of paragraph D, which specifically identifies the Illinois Attorney General as the party seeking costs under 815 ILCS 505/10.

This creates a real problem: the USA has no entitlement to seek relief under the Illinois Consumer Fraud Act, and Illinois has no independent standing to seek civil penalties under § 5(m)(1)(A) of the FTC Act. The Complaint's combined prayer obscures which plaintiff is asserting entitlement to each remedy and makes it impossible for Defendants to respond adequately. At minimum, the Court should require a more definite statement under Fed. R. Civ. P. 12(e) requiring Plaintiffs to separately identify the relief sought by each plaintiff under each count. Alternatively, to the extent the USA purports to seek relief available only to Illinois, or vice versa, those claims for relief should be dismissed.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully requests that the Court enter an order dismissing Plaintiffs' claims for monetary relief and civil penalties under Counts I-III; dismiss Counts IV-V for failure to state a claim (or, in the alternative to dismissing Count IV, strike any allegations relating to fake reviews prior to October 2024 and/or order a more definite statement as to conduct, if any, occurring after October 2024); order a more definite statement regarding the prayer for relief; and award such other and further relief as is just and proper.

B.E.S.T. GDR, LLC and YOSEF BERNATH

By:_____

One of their attorneys

Lawrence M. Benjamin (6196417)
CROWELL & MORING LLP
300 N. LaSalle Dr. Suite 2500
Chicago, IL 60654
(312) 379-4296
lbenjamin@crowell.com

Motty Stone
8424 Skokie Blvd. # 200
Skokie, IL 60077
Office: (847) 933-0300
Fax: (312) 509-4937
mstone@windycitylawgroup.com
ARDC # 6297720

## CERTIFICATE OF SERVICE

Lawrence M. Benjamin, an attorney, hereby certifies that he caused a true and correct copy of **DEFENDANTS' MOTION TO DISMISS ALL OR PART OF PLAINTIFFS' COMPLAINT** to be served via the court's e-filing system and by e-mail on July 17, 2026.

| | |
|---|---|
| AMANDA PALMER<br>Office of the Illinois Attorney General<br>115 South LaSalle Street<br>Chicago, Illinois 60603<br>(872) 272-0815 (telephone)<br>(312) 814-2593 (facsímile)<br>amanda.palmer@ilag.gov | DALE LICHTENSTEIN<br>THOMAS P. JAMES<br>JANICE PARKER<br>Office of the Illinois Attorney General<br>115 South LaSalle Street<br>Chicago, Illinois 60603<br>(872) 272-0815 (telephone)<br>(312) 814-2593 (facsímile)<br>dale.lichtenstein@ilag.gov |
| THOMAS P. JAMES<br>JANICE PARKER<br>Office of the Illinois Attorney General<br>115 South LaSalle Street<br>Chicago, Illinois 60603<br>(872) 272-0815 (telephone)<br>(312) 814-2593 (facsímile)<br>thomas.james@ilag.gov | JANICE PARKER<br>Office of the Illinois Attorney General<br>115 South LaSalle Street<br>Chicago, Illinois 60603<br>(872) 272-0815 (telephone)<br>(312) 814-2593 (facsímile)<br>janice.parker@ilag.gov |
| CADESBY B. COOPER<br>Trial Attorneys<br>U.S. Department of Justice<br>Enforcement & Affirmative Litigation Branch<br>450 5th Street NW, Suite 6400-S<br>Washington, DC 20530<br>(202) 616-2376 (Nelson)<br>(202) 305-7032 (Cooper)<br>(202) 742-7112 (Trundle)<br>(202) 616-8962 (facsímile)<br>cadesby.b.cooper@usdoj.gov | COLIN W. TRUNDLE<br>Trial Attorneys<br>U.S. Department of Justice<br>Enforcement & Affirmative Litigation Branch<br>450 5th Street NW, Suite 6400-S<br>Washington, DC 20530<br>(202) 616-2376 (Nelson)<br>(202) 305-7032 (Cooper)<br>(202) 742-7112 (Trundle)<br>(202) 616-8962 (facsímile)<br>colin.trundle@usdoj.gov |
| JAMES T. NELSON<br>Senior Trial Attorney<br>U.S. Department of Justice<br>Enforcement & Affirmative Litigation Branch<br>450 5th Street NW, Suite 6400-S<br>Washington, DC 20530<br>(202) 616-2376 (Nelson)<br>(202) 305-7032 (Cooper)<br>(202) 742-7112 (Trundle)<br>(202) 616-8962 (facsímile)<br>james.nelson2@usdoj.gov | WILLIAM J. HODOR<br>Federal Trade Commission<br>Midwest Region<br>230 South Dearborn Street, Room 3030<br>Chicago, Illinois 60604<br>(312) 960-5592 (telephone, Hodor)<br>(312) 960-5608 (telephone, Dodge)<br>whodor@ftc.gov |
| KAREN D. DODGE<br>Federal Trade Commission<br>Midwest Region<br>230 South Dearborn Street, Room 3030 | |

15

| Chicago, Illinois 60604<br>(312) 960-5592 (telephone, Hodor)<br>(312) 960-5608 (telephone, Dodge)<br>kdodge@ftc.gov | |

By: _____

Attorney for B.E.S.T. GDR, LLC and
YOSEF BERNATH

16