**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, and<br><br>PEOPLE OF THE STATE OF ILLINOIS, by and through their Attorney General, KWAME RAOUL,<br><br>      Plaintiffs,<br><br>      v.<br><br>B.E.S.T. GDR, LLC, an Illinois limited liability company, also doing business as PREMIUM HOME SERVICES, and<br><br>YOSEF BERNATH, individually, and as an owner, member, and/or manager of B.E.S.T. GDR, LLC,<br><br>      Defendants. | Case No. 1:26-cv-05415<br><br>District Judge Georgia N. Alexakis<br><br>**Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss** |

Plaintiffs, United States of America ("United States") and People of the State of Illinois ("Illinois"), respectfully oppose Defendants' motion under Federal Rules of Civil Procedure 12(b)(6), (e), and (f). The motion should be denied because the complaint plausibly alleges each challenged claim, provides fair notice of the alleged conduct and the remedies sought, and seeks only relief available under the asserted causes of action.

## RELEVANT BACKGROUND

The complaint alleges that Defendants operated a multi-state scheme to deceptively market and sell home repair and improvement services. Compl. ¶¶ 3–4, 16–48. Defendants created thousands of online business profiles using invented business names, false addresses, and local phone numbers to attract consumers seeking local services. *Id.* ¶¶ 3–4, 16–20, 37–41. To promote the false impression of legitimate local companies, Defendants fabricated, purchased, or procured

5-star customer reviews. *Id.* ¶¶ 25–36. The complaint alleges that this conduct continued after the effective date of the Consumer Reviews and Testimonials Rule ("RTR"). *Id.* ¶ 36.

When consumers call Defendants' phone numbers, Defendants route their calls to customer service representatives typically located overseas. *Id.* ¶ 37. These representatives pose as employees of real local businesses and offer same-day service dispatches or annual memberships. *Id.* ¶¶ 38–41. In numerous instances, Defendants' representatives collected consumers' credit or debit card information and other financial account identifiers during the initial call while concealing Defendants' identities and the true nature of their services. *Id.* ¶¶ 40–41.

Consumers experienced no-shows, delays, unsafe or unqualified work, difficulty obtaining refunds, and additional expense hiring legitimate providers afterward. *Id.* ¶¶ 42–47. Defendants' practices harmed over 100,000 consumers and caused tens of millions of dollars in losses. *Id.* ¶ 5.

## **LEGAL STANDARDS**

### A.     **Rule 12(b)(6) Motion to Dismiss**

To survive a Rule 12(b)(6) motion, a complaint must plead sufficient factual matter to state a facially plausible claim. *Taylor v. Salvation Army*, 110 F.4th 1017 (7th Cir. 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 556–557 (2007)). For a claim to have "facial plausibility," the complaint's "factual content" must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In evaluating the complaint, the Court accepts well-pleaded factual allegations as true, draws "reasonable inferences" in Plaintiffs' favor, but disregards legal conclusions and "a formulaic recitation of the elements of a cause of action." *Javid v. M.A.C. Cosmetics, Inc.*, No. 25 CV 11693, 2026 WL 1601454, at *1 (N.D. Ill. June 4, 2026) (quoting *Iqbal*, 556 U.S. at 678, *Twombly*, 550 U.S. at 555, and *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018)).

2

**B.** **Rule 12(f) Motion to Strike**

Motions to strike are "disfavored." *Malloy v. Morrin*, No. 23 CV 2234, 2025 WL 588634, at \*1 (N.D. Ill. Feb. 24, 2025). A court may strike contested language in a complaint only where it is irrelevant to the controversy or unduly prejudicial. *Id.* (citing *Siegel v. HSBC Holdings*, *plc*, 283 F. Supp. 3d 722, 730 (N.D. Ill. 2017), *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 1007 (N.D. Ill. 2013), and *Sun Life Assurance Co. of Canada v. Great Lakes Bus. Credit LLC*, 968 F. Supp. 2d 898, 903 (N.D. Ill. 2013)). Relevancy turns on whether the contested language bears "any possible relation to the controversy," and undue prejudice turns on whether the language "confuses the issues or is so lengthy and complex that it places an undue burden on the party moving to strike." *Id.* It is within the court's discretion to grant a motion to strike. *Id.*

**C.** **Rule 12(e) Motion for More Definite Statement**

A party may move for a more definite statement under Rule 12(e) only when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The rule is intended to clarify unintelligible pleadings, not to replace discovery. *Galik v. SBC Waste Sols., Inc.*, No. 25 CV 12915, 2026 WL 2034907, at \*2 (N.D. Ill. July 14, 2026) (citing *Direct Commc'ns, Inc. v. Horizon Retail Const., Inc.*, 387 F. Supp. 2d 828, 831 (N.D. Ill. 2005)).

## ARGUMENT

Defendants raise four arguments: (A) Count V fails to state a claim under Section 521(a)(2) of the Gramm-Leach-Bliley Act ("GLBA"); (B) Count IV improperly applies the RTR retroactively; (C) Counts I through III seek unavailable monetary relief; and (D) the Prayer for Relief is impermissibly vague. None warrants dismissal, striking allegations, or a more definite statement.

3

**A.** **The Court should deny Defendants' motion to dismiss Count V for failure to state a claim.**

The Court should deny Defendants' motion to dismiss Count V because (1) the plain language of the GLBA forecloses Defendants' proposed third-party limitation and (2) the complaint plausibly alleges a violation of the statute.

1. <u>Section 521(a)(2)'s text forecloses Defendants' proposed third-party limitation.</u>

GLBA Section 521(a)(2) reaches the conduct alleged here because the statute prohibits obtaining customer information of a financial institution through false, fictitious, or fraudulent representations, including when the information obtained belongs to the deceived customer. *See* 15 U.S.C. § 6821(a)(2). Defendants' interpretation—that GLBA Section 521(a)(2) makes it unlawful for a person to deceive the customer of a financial institution to obtain a third person's financial information, but not to obtain the deceived customer's financial information—improperly isolates the phrase "another person" from its grammatical context and reads into the statute a limitation that Congress did not enact. *See Chevron USA Inc. v. Plaquemines Par.*, 146 S. Ct. 1052, 1061 (2026) ("[G]enerally in statutory interpretation, it is the ordinary, not literalist, meaning that is the better one.") (cleaned up); ECF No. 20 at 3. Because the complaint plausibly alleges that Defendants obtained customer information maintained by financial institutions through false, fictitious, or fraudulent representations, Count V should not be dismissed. *See Compl.* ¶¶ 37–41; *Javid*, 2026 WL 1601454, at *1.

Statutory interpretation begins with the "plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). GLBA Section 521(a)(2) makes it unlawful for "***any person***" to:

> obtain or attempt to obtain, or cause to be disclosed or attempt to cause to be disclosed to ***any person***, customer information of a financial institution relating to ***another person*** . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution.

15 U.S.C. § 6821(a)(2) (emphasis added). The GLBA broadly defines "customer information of a financial institution" as "any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of the financial institution and is identified with the customer." *Id.* § 6827(2). A "[f]inancial institution" includes "depository institution[s]" such as banks, "any credit card issuer or operator of a credit card system," and any other institution "engaged in the business of providing financial services to customers who maintain a credit, deposit, trust, or other financial account or relationship with the institution." 12 U.S.C. § 461(b)(1)(A); 15 U.S.C. § 6827(4)(A), (4)(B).

The ordinary meaning of the statutory text forecloses a third-party limitation. *See Schneider Nat'l Leasing, Inc. v. United States*, 11 F.4th 548, 559 (7th Cir. 2021) ("We ordinarily assume, absent a clearly expressed legislative intention to the contrary, that the legislative purpose is expressed by the ordinary meaning of the words used.") (cleaned up). GLBA Section 521(a)(2) makes it unlawful for "any person" to obtain customer information of a financial institution "relating to another person" through "false, fictitious, or fraudulent" representations or statements. 15 U.S.C. § 6821(a)(2). The ordinary meaning and grammatical structure of the term "another person" distinguishes the person whose customer information is obtained (the object) from the person obtaining that information (the subject); it does not grammatically require that the deceived customer and the person to whom the customer information relates be different people. *See* 15 U.S.C. § 6821(a)(2); *Schneider Nat'l Leasing, Inc.*, 11 F.4th at 559.

The presumption of consistent usage confirms that reading. *See Ortiz-Santiago v. Barr*, 924 F.3d 956, 962 (7th Cir. 2019) ("[O]ne of the most basic rules of statutory interpretation" is that "identical words used in different parts of the same act are intended to have the same meaning."). GLBA Section 521(a)'s preamble contains the phrase "relating to another person," which is the

root clause that applies equally to subsections (1), (2), and (3). 15 U.S.C. § 6821. Under subsection (a)(1), it is unlawful to obtain information "relating to another person" by lying to a bank employee. *Id.* § 6821(a)(1). In this scenario, "another person" logically refers to the bank's customer (i.e., someone other than the deceiver). *See id.* Applying the presumption of consistent usage, "another person" in subsection (a)(2) must mean the same thing: the targeted customer. *See id.* § 6821(a)(2). By contrast, Defendants' argument forces the phrase "another person" to mean "the victim customer" in subsection (a)(1) but "a third party" in subsection (a)(2). *See id.* Accordingly, the statutory text provides no basis for Defendants' proposed limitation. *See* 15 U.S.C. § 6821(a); *Barr*, 924 F.3d at 962.

The lack of textual support is not the only problem with Defendants' interpretation. Defendants' interpretation produces the anomalous result that the statute prohibits deceiving a customer to obtain a spouse's or business partner's customer information but permits deceiving that same customer to obtain the customer's own information. *See* ECF No. 20 at 3–7. Congress's decision not to regulate a person's access to their own customer information does not suggest that Congress intended to exempt a fraudster who obtains that information through false, fictitious, or fraudulent representations. *See Senne v. Vill. of Palatine, Illinois*, 784 F.3d 444, 447 (7th Cir. 2015) ("[S]tatutes have to be interpreted to avoid absurd results.").

These textual and practical problems confirm that Defendants' interpretation cannot be reconciled with the established principles of statutory construction. Adopting Defendants' interpretation would require the Court to read into GLBA Section 521(a)(2) a third-party limitation that Congress never enacted. *See* ECF No. 20 at 3–7. However, courts may not rewrite federal statutes by adding restrictions Congress omitted. *See Hillman v. Maretta*, 569 U.S. 483, 496 (2013) ("We have explained that where Congress explicitly enumerates certain exceptions to a general

prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.") (cleaned up); *Alabama v. North Carolina*, 560 U.S. 330, 352 (2010) ("We do not—we cannot—add provisions to a federal statute.").

Moreover, because the statutory text resolves the issue, legislative history has no role in the Court's analysis. *See FTC v. RCG Advances, LLC*, 695 F. Supp. 3d 368, 390–91 (S.D.N.Y. 2023) ("The plain text of [the GLBA] controls, and legislative history cannot alter the meaning of that plain text. . . . The Court will not read a limitation (i.e., that the means of deception must be akin to impersonation) into the text."). Nonetheless, the legislative history cited by Defendants supports Plaintiffs' interpretation. *See* ECF No. 20 at 4, n.3. The House Report explains that the phrase "relating to another person" was added to ensure that the GLBA would not hinder consumers from obtaining their own information from their own financial institutions.[1] Because GLBA Section 521(a)(2) reaches the conduct alleged here, Defendants' proposed third-party limitation fails.

    2.    <u>The complaint plausibly alleges a violation of GLBA Section 521(a)(2).</u>

Because GLBA Section 521(a)(2) reaches the conduct alleged, the complaint plausibly alleges a violation of the statute. The complaint alleges that Defendants violated GLBA Section 521(a)(2) by making false, fictitious, or fraudulent representations to customers of financial institutions to obtain their customer information. Compl. ¶¶ 4, 37–48, 72–81. The complaint

---

[1] *Compare* H.R. 4321, 105th Cong. § 1003(a) (July 23, 1998), https://www.congress.gov/105/bills/hr4321/BILLS-105hr4321ih.pdf (as introduced, the bill did not contain the phrase "relating to another person"), *with* H.R. Rep. No. 105-701 at 8–9 (Aug. 21, 1998) (describing the committee amendment adding that phrase and explaining that it was intended to "[c]larify that the prohibition on obtaining customer information by false pretenses applies only to instances in which a person seeks customer information of another," in line with the drafters' articulated goal of "preserving the easy and immediate access to personal account information that most consumers of financial services have come to expect").

alleges that Defendants used fictitious business profiles to route consumers to Defendants' representatives, who then falsely represented that they were affiliated with local businesses and offered a same-day service dispatch or an annual membership. *Id.* ¶¶ 4, 37–48. During those calls, Defendants' representatives obtained consumers' credit and debit card information while concealing Defendants' true identities and the nature of their services. *Id.* These representations were false, fictitious, or fraudulent because Defendants were not the local businesses they claimed to be and instead acted as intermediaries that referred work to third parties who were often unavailable, unlicensed, or performed shoddy or unsafe work. *Id.* ¶¶ 37–48, 78–81.

This case presents a paradigmatic GLBA violation. Just five years after the GLBA became law, the Federal Trade Commission ("FTC") invoked it in a case involving a telemarketing scam similar to the deceptive practices at issue here. *See, e.g.*, Compl. ¶¶ 9–16, 33–36, *FTC v. Xtel Mktg, Inc.*, No. 04C 7238, 2004 WL 3523308 (N.D. Ill. Nov. 9, 2004) (pleading a GLBA Section 521(a)(2) violation based on allegations that telemarketers had falsely claimed to be affiliated with Social Security Administration or Medicare to get consumers to provide their bank account information). To date, courts have uniformly held that defendants may be liable under GLBA Section 521(a)(2) when defendants induce customers to disclose their financial information such as bank account, credit card, or debit card numbers using false, fictitious, or fraudulent representations.[2] Accordingly, Defendants' motion to dismiss Count V should be denied.

---

[2] *See, e.g.*, *FTC v. Doxo, Inc.*, 771 F. Supp. 3d 1162, 1170, 1179 (W.D. Wash. 2025) (allegations that online bill payment company induced consumers to disclose financial account information through false representations about the nature of its services stated plausible claim for relief under the GLBA); *FTC v. Voyager Digital LLC,* No. 1:23-cv-08960-GHW-SLC, Dkt. 74 at 34–40 (S.D.N.Y. May. 22, 2024) (finding allegations that defendants induced consumers to disclose financial information through false FDIC-insurance representations stated a plausible GLBA claim); *FTC v. RCG Advances, LLC*, 695 F. Supp. 3d 368, 389–92 (S.D.N.Y. 2023) (holding individual defendant liable under the GLBA for false representations used to induce consumers to

**B.    The Court should deny Defendants' motion to dismiss, strike, or order a more definite statement as to Counts IV and its supporting allegations.**

Count IV alleges that Defendants continued creating, procuring, and purchasing fake reviews after the RTR's effective date. *See* Compl. ¶¶ 25–36, 63–71. Because the complaint alleges continuing post-effective-date conduct, Count IV does not depend on retroactive application of the Rule. Defendants' contrary argument rests on selectively reading isolated examples as though they cabined the temporal scope of the complaint. ECF No. 20 at 7–9.

1.    <u>Count IV plausibly alleges RTR violations based on continuing conduct after the Rule's effective date.</u>

The complaint identifies the Rule's October 21, 2024, effective date and incorporates Paragraph 36, which alleges that Defendants continued creating, procuring, or purchasing fake reviews and ratings:

> Even after receiving a Civil Investigative Demand from the Commission on or about February 6, 2024, Defendants ***continue*** to write, create, procure, or purchase fake positive consumer reviews and 5-star ratings about their businesses and services when they know that the reviewers do not exist, have no experience with their businesses or services, or that the reviewers' experiences with their businesses or services are being misrepresented.

Compl. ¶¶ 36, 63 (emphasis added). That allegation establishes that Count IV does not depend on retroactive application of the Rule. *Id.*

Paragraphs 27 through 30 provide representative examples of Defendants' fake-review scheme, not its endpoint. Compl. ¶¶ 27–30. Defendants mischaracterize the complaint by arguing that the alleged conduct ended in January 2024. *See* ECF No. 20 at 7. Although the examples in Paragraphs 27 through 30 occurred in or around January 2024, the complaint does not allege that

---

provide bank account information); *FTC v. Celsius Network Inc.*, No. 23CV6009 (DLC), 2023 WL 8603064, at *5 (S.D.N.Y. Dec. 12, 2023) (finding complaint stated GLBA claim based on allegations that defendants obtained customers' financial information through false representations).

Defendants' conduct ceased then. *See* Compl. ¶¶ 27–30. Instead, Paragraph 36 alleges that the scheme continued after the Rule's effective date, and the representative examples support an ongoing practice of creating, procuring, or purchasing fake reviews and ratings. *See id.* ¶¶ 25–36.

Paragraph 36 further alleges that Defendants "continue" to create, procure, or purchase fake reviews and ratings through the filing of the complaint. *See* Compl. ¶ 36. Defendants mischaracterize that allegation by converting the complaint's present-tense statement that Defendants "continue" the challenged conduct into a past-tense allegation that the conduct merely continued after February 2024 but might have ended before the RTR's effective date. *See* ECF No. 20 at 7 n.7. However, the complaint explicitly pleads otherwise, alleging Defendants' conduct continues after the RTR's effective date through the filing of the complaint. *See* Compl. ¶¶ 36, 69.

    2.    <u>The Court should deny Defendants' motions to strike and for a more definite statement.</u>

Defendants also request two forms of "alternative" relief that include (1) striking "all allegations in Count IV directed at pre-October 21, 2024 conduct" under Rule 12(f) "as an improper application of an inapplicable legal standard," and (2) ordering the United States "under [Rule] 12(e) to plead that the alleged wrongful acts occurred after the Rule's effective date." ECF No. 20 at 9. Defendants do not cite pertinent legal standards or develop an argument explaining why either remedy is warranted. *Id.* Thus, the Court should deny Defendants' alternative relief based on waiver. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."). Regardless, Defendants are not entitled to their alternative relief even on the merits.

i. *The Court should deny Defendants' motion to strike.*

Rule 12(f) provides no basis to strike the challenged allegations because they are relevant and Defendants identify no undue prejudice. *See Malloy*, 2025 WL 588634, at *1. The complaint's allegations of Defendants' fake reviews and ratings prior to the effective date of the RTR are relevant for two reasons. First, the allegations are directly relevant because the fake-review scheme supports multiple claims independent of Count IV. Counts I through III allege that Defendants violated Section 5 of the FTC Act through deceptive practices, including fake reviews and ratings; Count V relies in part on those same representations; and Illinois's claims incorporate the same conduct. Compl. ¶¶ 49–62, 72–87, 90–91.

Second, the allegations are relevant because they bear directly on the knowledge requirement for RTR civil penalties. The FTC Act authorizes civil penalties for rule violations only where the defendant acted "with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule." 15 U.S.C. § 45(m)(1)(A); *United States v. Dish Network, L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020) ("[Section] 45(m)(1)(A) includes a variation on an ignorance-of-law defense; a business can be liable only if it either knew that the act was unlawful or if it should have known that the act was unlawful."); *cf. FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988) (noting that FTC Act Section 5(a) does not require that deceptive practices "be made with an intent to deceive"). The complaint's allegations regarding Defendants' conduct occurring before and after the RTR's effective date therefore support the inference that Defendants knew their acts were deceptive based on a sustained pattern of repeated deception rather than isolated mistakes. *See* Compl. ¶¶ 25–36.

As for undue prejudice, Defendants articulate none and thus fail to meet their burden. *See* ECF No. 20 at 9; *Malloy*, 2025 WL 588634, at *1. Even if Defendants had identified any conceivable prejudice, it would not be undue because the challenged allegations are directly relevant to multiple claims in the complaint. *Compare* Compl. ¶¶ 25–36, *with* Compl. ¶¶ 51–62, 78–81, 86–87, 90–91. The challenged allegations should therefore remain in the complaint.

> ii.     *The Court should deny Defendants' motion for a more definite statement.*

Defendants have failed to show they are entitled to a more definite statement under Rule 12(e), asserting only that: "the USA should be required . . . to plead that the alleged wrongful acts occurred after the [RTR's] effective date." ECF No. 20 at 9; *see Galik*, 2026 WL 2034907 at *2. As explained above, Defendants' request is premised on their misstatement of the verb "continue" in Paragraph 36 of the complaint, which their brief mischaracterizes in the past tense but which the complaint alleges in the present tense. *Compare* ECF No. 20 at 7 n.7, *with* Compl. ¶ 36. Paragraph 36 already alleges that part of Defendants' fake-review scheme occurred after the RTR's effective date. Compl. ¶ 36. Therefore, there is no basis for requiring the United States to make a more definite statement on this point. *See* Fed. R. Civ. P. 12(e); *Galik*, 2026 WL 2034907 at *2.

Moreover, the crux of Rule 12(e) is to provide sufficient clarity where the pleading is so lacking that the movant cannot reasonably respond. *See* Fed. R. Civ. P. 12(e); *Galik*, 2026 WL 2034907 at *2. Count IV's supporting allegations, by contrast, clearly answer the basic questions of what, why, where, and how as to Defendants' conduct. *See* Compl. ¶¶ 25–36. Found primarily in Part B of the complaint, these allegations are spread over eleven paragraphs and are replete with details about the nature of Defendants' fake reviews and ratings. *See id.* Importantly, these allegations describe how the ratings and reviews worked and why they were deceptive, provided numerous examples of the conduct and where the conduct occurred, and described the conduct as an ongoing scheme—meaning Defendants' conduct that postdated the RTR is of the same kind

12

that predated the RTR. *Id.* For pleading purposes, this information provides sufficient notice for Defendants to prepare a response. *See id.*; *Javid*, 2026 WL 1601454 at \*1. Thus, the Court should deny Defendants' motion for a more definite statement.

      **C.**      **The Court should deny Defendants' motion to dismiss claims for monetary relief under Counts I through III.**

The Court should deny Defendants' motion to dismiss claims for monetary relief under Counts I through III because those counts do not seek monetary relief. *See* ECF No. 20 at 9–11. Instead, they seek only injunctive relief under Section 5(a) of the FTC Act. Compl. ¶¶ 49–62, 92, A. Because Defendants' argument mischaracterizes the relief sought by the complaint as to Counts I through III, their motion should be denied. *See id.*; ECF No. 20 at 9–11.

The complaint expressly distinguishes the injunctive relief sought for the FTC Act Section 5(a) claims in Counts I through III from the civil penalties sought for RTR and GLBA violations. *Id.* ¶¶ 92–94, A, G. Counts I through III each describe one facet of Defendants' deceptive practices and allege that Defendants' conduct violated FTC Act Section 5(a)—not any FTC rule. *Id.* ¶¶ 49–62. The complaint seeks only injunctive relief for those FTC Act Section 5(a) violations based on the Consumer Injury section and Paragraph A of the Prayer for Relief. *Id.* ¶¶ 92, A. By contrast, the complaint seeks civil penalties for violations of the RTR and the GLBA in the Civil Penalties section and Paragraph G of the Prayer. *Id.* ¶¶ 93–94, G. Thus, the Court should deny Defendants' motion to dismiss relief under Counts I through III that the complaint does not seek.

      **D.**      **The Court should deny Defendants' motions for a more definite statement and dismissal as to the Prayer for Relief.**

Defendants argue that the complaint's "combined" Prayer for Relief "obscures which plaintiff is asserting entitlement to each remedy and makes it impossible for Defendants to respond adequately." ECF No. 20 at 13. Defendants also argue that any relief sought by the United States under Illinois law should be dismissed, and any relief sought by Illinois under federal law should

be dismissed. *Id.* The Court should deny Defendants' motions because the Prayer for Relief provides sufficient notice of which Plaintiff seeks which relief, which in turn demonstrates that Plaintiffs do not seek relief to which they are not entitled. Compl. ¶¶ 49–94, A–H; *see Galik*, 2026 WL 2034907 at *2.

At the pleading stage, the complaint must be "assessed as a whole" and its allegations must not be viewed in "isolation." *See National Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 194, 199 (2024). Defendants are not entitled to relief under Rule 12(e) because the Prayer provides sufficiently clear notice to Defendants about each Plaintiff's requested relief when read together with other sections of the complaint. *See id.* In sum, the complaint connects each specific relief to a specific Plaintiff via a specific category of claim. *See* Compl. ¶¶ 49–94, A–H; *National Rifle Ass'n of Am.*, 602 U.S. at 199; *Galik*, 2026 WL 2034907 at *2.

First, the complaint specifies which relief is sought for each claim under the Consumer Injury, Civil Penalties, and Prayer for Relief sections. Compl. ¶¶ 92–94, A–H. Second, the complaint specifies which Plaintiff alleges each claim under each count. *Id.* ¶¶ 51–91. For example, under the Consumer Injury section and Paragraph A of the Prayer, the complaint seeks a permanent injunction against Defendants for each FTC Act Section 5(a) violation; in turn, the complaint provides that the United States seeks this relief based on its allegations of FTC Act Section 5(a) violations in Counts I through III. *Id.* ¶¶ 51–91, A. Because this logic holds true for each specific relief sought, the Prayer for Relief is not ambiguous and makes clear that neither Plaintiff seeks relief to which they are not entitled. *Id.* ¶¶ 86–91, 92, A–H; *see* ECF No. 20 at 13. Thus, the Court should deny Defendants' motions for a more definite statement and dismissal of relief. *See National Rifle Ass'n of Am.*, 602 U.S. at 199; *Galik*, 2026 WL 2034907 at *2.

14

## CONCLUSION

For these reasons, the Court should deny Defendants' motion in its entirety.

Dated: August 7, 2026

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW S. BOUTROS
United States Attorney
Northern District of Illinois

*s/ Cadesby B. Cooper*
CADESBY B. COOPER
COLIN W. TRUNDLE
Trial Attorneys
JAMES T. NELSON
Senior Trial Attorney
U.S. Department of Justice
Enforcement & Affirmative Litigation
Branch
450 5th Street, NW, Suite 6400-S
Washington, DC 20044-0386
(202) 742-7112 [telephone]
(202) 616-8962 [facsimile]
colin.trundle@usdoj.gov
cadesby.b.cooper@usdoj.gov
james.nelson2@usdoj.gov

**FOR PLAINTIFF STATE OF ILLINOIS:**

KWAME RAOUL
Attorney General

*s/Amanda Palmer*
AMANDA PALMER
DALE LICHTENSTEIN
THOMAS P. JAMES
JANICE PARKER
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(872) 272-0815 [telephone]
(312) 814-2593 [facsimile]
amanda.palmer@ilag.gov
dale.lichtenstein@ilag.gov
thomas.james@ilag.gov
janice.parker@ilag.gov