**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, and<br><br>PEOPLE OF THE STATE OF ILLINOIS, by their Attorney General, KWAME RAOUL,<br><br>Plaintiff,<br><br>v.<br><br>B.E.S.T. GDR, LLC, an Illinois limited liability company, also doing business as PREMIUM HOME SERVICE, and<br><br>YOSEF BERNATH, individually, and as an owner, member, and/or manager of B.E.S.T. GDR, LLC,<br><br>Defendants. | Case No. 1:26-cv-5415 |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**<u>ALL OR PART OF PLAINTIFFS' COMPLAINT</u>**

This reply is submitted by Defendants B.E.S.T. GDR, LLC, an Illinois limited liability company, also doing business as PREMIUM HOME SERVICE ("PHS") and Yosef Bernath ("Bernath") (collectively "Defendants"), in support of their motion to dismiss all or part of the complaint filed by UNITED STATES OF AMERICA ("USA"), and PEOPLE OF THE STATE OF ILLINOIS, by their Attorney General, KWAME RAOUL ("Illinois" which together with the USA are sometimes collectively referred to as "Plaintiffs").

Plaintiffs' opposition fails to overcome the deficiencies identified in Defendants' motion. As set forth below, Plaintiffs' arguments rest on a strained reading of the GLBA that renders statutory language superfluous and, tellingly, Plaintiffs do not cite a single 12(b)(6) case adopting their novel statutory interpretation, a refusal to properly allege post-October 21, 2024 conduct after the effective date of the Reviews and Testimonials Rule ("RTR"), and an undifferentiated Prayer for Relief that denies Defendants fair notice. Defendants address each argument in turn.

**A. <u>The plain text of Section 521(a)(2) requires a third-party victim distinct from the deceived customer</u>.**

Plaintiffs' interpretation of the statute renders superfluous the phrase "relating to another person." That interpretation is contrary to rules of statutory construction. "[W]e try to avoid interpretations of statutes that render words, or other sections, superfluous." *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007) citing *Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120; *United States v. Chemetco, Inc.*, 274 F.3d 1154, 1160 (7th Cir. 2001). Plaintiffs contend that "another person" merely distinguishes the subject (the person obtaining the information) from the object (the person whose information is obtained). But that distinction is already accomplished by the statute's existing structure: "any person" who obtains "customer information." The phrase "relating to another person" would be entirely unnecessary if it served only to restate that the person obtaining information is different from the person whose information is obtained — a truism that requires no statutory elaboration. Plaintiffs' reading thus strips the phrase of independent meaning, in direct violation of the applicable canons of statutory construction.

Under Plaintiffs' interpretation, Section 521(a)(2) would read as follows, with the phrase "relating to another person" stricken and serving no function:

> It shall be a violation of this subchapter for any person to obtain or attempt to obtain, or cause to be disclosed or attempt to cause to be disclosed to any person, customer information of a financial institution ~~relating to another person~~ …by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution.

Contrary to Plaintiffs' interpretation, Defendants are not seeking to insert a limitation into the text. It is already there. It is Plaintiffs who improperly attempt to excise a limitation that is plain from the text of Section 521.

Plaintiffs invoke the presumption of consistent usage, arguing that "another person" must mean the same thing in subsections (a)(1) and (a)(2). But that presumption supports Defendants' reading, not Plaintiffs' interpretation. In subsection (a)(1), "another person" refers to someone other than the person being deceived — *i.e.*, the bank employee is deceived to obtain information about a different person, the bank's customer. Applying the same meaning consistently, "another person" in subsection (a)(2) likewise refers to someone other than the person being deceived — *i.e.*, the customer is deceived to obtain information about a different person, a third party. Plaintiffs' reading, by contrast, requires "another person" to mean "someone other than the deceiver" in subsection (a)(2) but "someone other than the person being deceived" in subsection (a)(1).

Plaintiffs' example with respect to subsection (a)(1) actually proves Defendants' point. With respect to subsection (a)(1), Plaintiffs state that Section 521(a)(1) prohibits the fraudster from lying to a bank employee to obtain information "relating to another person" – *i.e.*, the bank's customer – and that "'another person' logically refers to the bank's customer." (ECF Doc. 26 at 6.) In other words, the person being lied to must be someone other than "another person" whose information is being sought.

Plaintiffs' interpretation of Section 521(a)(2) is neither plain nor ordinary. The ordinary meaning and plain intention of Section 521(a)(2) is to prohibit the fraudster from obtaining or attempting to obtain customer information of another person by making misrepresentations to a customer of a financial institution. The customer to whom the misrepresentations are made is obviously different than "another person" whose customer information the fraudster seeks to obtain.

Plaintiffs erroneously argue that Defendants' reading produces the "anomalous result" that the statute prohibits deceiving a customer to obtain a spouse's information but "permits" deceiving that same customer to obtain the customer's own information. Contrary to

Plaintiffs' assertion, Defendants' interpretation of Section 521(a)(2) does not "permit" deceiving a customer to obtain the customer's own information. It simply does not prohibit it, as such conduct is outside the scope of the GLBA and is covered by other statutes and existing law. There is nothing "anomalous" about this result. Congress enacted Section 521 to fill a specific gap — pretexting to obtain third-party financial information — not to duplicate the fraud protections already provided by the FTC Act, state consumer protection statutes, and common law. The conduct Plaintiffs describe — deceiving a customer to obtain the customer's own financial information — is precisely the conduct already alleged in other counts. Plaintiffs' argument thus proves Defendants' point: Section 521(a)(2) was designed to reach conduct not already covered by existing law, namely the procurement of another person's financial information through deception.

While the Seventh Circuit has not interpreted Section 521, it did construe a different statute with the phrase "another person." Its decision in *United States v. Spears,* 729 F.3d 753 (2013) supports the rejection of Plaintiffs' interpretation of Section 521. In this case, Plaintiffs argue that "another person" should be viewed from the perspective of "the person obtaining that information (the subject)," rather than the person whose customer information is obtained (the object)," and that the phrase "another person" does not require that "the deceived customer and the person to whom the customer information relates be different people." (ECF Doc. 26 at 5.) In *United States v. Spears,* the prosecutor made essentially the same argument, asserting that one Spears, who created a counterfeit permit at the request of Payne, violated a statute prohibiting the transfer of a "means of identification of another person" because, from Spears' perspective, Payne was "another person." After considering the context of the statute, the legislative history, and the government's position in other cases, the Seventh Circuit rejected the prosecutor's argument, noting that the statute was enacted to

address identity theft, and not meant to cover every sort of identity fraud. It also rejected the attempt of "clever prosecutors riffing on equivocal language." 729 F.3d at 758.

The same could be said in this case. Following the Supreme Court's limitation on the FTC's remedies in *AMG Capital Mgmt., LLC v. FTC*, Plaintiffs are making a clever attempt to stretch Section 521 beyond its intended scope. They also fail to acknowledge that Section 521 was enacted to address pretexting, rather than cover ordinary fraud.

Plaintiffs ignore the entire context of Section 521 and the purpose for which it was enacted. Section 521 was not needed to prohibit a fraudster from deceiving a customer to obtain the customer's own information — that is nothing more than ordinary fraud covered under other existing statutes and common law, including, according to Plaintiffs, the claims under other counts of this complaint. The purpose of Section 521 was to prohibit pretexting, including misrepresenting to customers that the fraudster is using legal means to obtain customer information of "another person" when in fact such means are illegal.

Plaintiffs' interpretation also ignores the FTC's prior construction of the statute, as well as legislative history. Prior to *AMG Capital Mgmt., LLC v. FTC*, the FTC confined its actions to those involving "pretexting." And the FTC Commissioner's own testimony before Congress identified <u>two</u> distinct deceptive acts that could ground FTC enforcement action: first, "making misrepresentations to a financial institution to obtain confidential information for resale"; and second, "representing to customers that information will be obtained legally, when in fact it can be obtained only through actions that likely violate the FTCA." *Id*. at 5. The Commissioner specifically stated that the latter act "may also be a *deceptive* act affecting commerce." *Id.* That second deceptive act is what Section 521(a)(2) addresses. Section 521(a)(2) prohibits making a "false, fictitious, or fraudulent statement or representation to a customer" — *e.g.* misrepresenting that such information could be legally obtained — in order to "obtain or attempt to obtain . . . customer information of a financial institution relating to

another person." Plaintiffs contend that the House Report's statement — that the phrase "relating to another person" was added to ensure the GLBA would not hinder consumers from obtaining their own information from their own financial institutions — supports their reading. It does not. In fact it confirms Defendants' interpretation: the addition of "another person" was necessary precisely to clarify that the scope of the prohibition involves three parties, not merely an exchange between two parties. The addition thus served the purpose of clarifying that the person from whom information is sought must be different from the person whose information is obtained.

Plaintiffs' reliance on cases from other district courts is misplaced. Leaving aside that none of those cases are precedential, none of them addressed the issue raised by Defendants' motion — the meaning of "another person" as used in Section 521. In *FTC v. Doxo, Inc.,* 771 F. Supp. 3d 1162, 1179 (2025), the defendant argued that it did not make a "literally false statement" as required by the GLBA, and the court held that the "FTC need not establish that [defendant] made a 'literally false statement' to proceed." In *FTC v. RCG Advances, LLC*, 695 F. Supp. 3d 368, 390-391 (2023), the court rejected defendant's argument that there could be no "false, fictitious, or fraudulent statement" without deception akin to impersonation. In *FTC v. Celsius Network Inc.*, 2023 U.S. Dist. LEXIS 222009, *13 (2023), the court rejected the defendants' assertion "the FTC has not adequately alleged individual liability for these actions." (Plaintiffs also cite to *FTC v. Voyager Digital LLC*, which is not even a reported opinion, and like the other cases does not address what is at issue here.) None of these courts had occasion to consider whether the statute reaches the single-party scenario alleged here, where the deceived customer and the person whose information is obtained are one and the same. These cases therefore provide no support for Plaintiffs' position.

Count V fails to state a claim because it does not allege that Defendants deceived Consumer A in order to extract financial information belonging to Consumer B or any other

identifiable third party. In every instance alleged, the financial institution's customer whose information was obtained is the very same person to whom Defendants allegedly made the misrepresentation. There is no "another person."

The requirement that the information sought must relate to "another person" is not a peripheral detail; it is the statutory predicate that separates § 521(a)(2)'s financial privacy violation from an ordinary fraud or deceptive practice allegation already covered by Counts I–III of the complaint. Because the complaint nowhere alleges that Defendants obtained or attempted to obtain any customer's financial information belonging to a third party distinct from the deceived consumer, Count V fails to state a claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### B. Count IV improperly relies on pre-October 21, 2024 conduct, and the complaint fails to plausibly allege post-effective-date violations.

Plaintiffs contend that Paragraph 36 of the complaint — which alleges that Defendants "continue" to create, procure, or purchase fake reviews — establishes post-effective-date conduct sufficient to sustain Count IV. But a bare allegation that Defendants "continue" such conduct does not satisfy the pleading requirements of Rule 8. The complaint provides no factual content whatsoever regarding any specific post-October 21, 2024 conduct: no dates, no examples, no identification of particular reviews or ratings created after the Rule's effective date. Every concrete, factual allegation of fake-review conduct in the complaint — Paragraphs 27 through 30 — describes conduct occurring in or before January 2024, nearly ten months before the RTR took effect. The conclusory assertion that Defendants "continue" such conduct is precisely the type of "formulaic recitation" that *Iqbal* and *Twombly* instruct courts to disregard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Without any factual allegations supporting the inference that Defendants engaged in the specific conduct prohibited by the RTR after its effective date, Count IV fails to state a plausible claim.

Plaintiffs further argue that pre-October 21, 2024 allegations should remain in the complaint because they are relevant to other counts and to the knowledge element for RTR civil penalties under 15 U.S.C. § 45(m)(1)(A). Neither argument saves Count IV. That pre-effective-date conduct may be relevant to Counts I through III does not establish that such conduct constitutes a violation of the RTR, which did not exist at the time. And while Plaintiffs invoke the knowledge requirement of Section 45(m)(1)(A), the threshold question is whether the complaint plausibly alleges any post-effective-date violation at all — a question that must be answered before the Court reaches the issue of *scienter*. Without a plausible allegation that Defendants violated the RTR after October 21, 2024, there is no violation to which the knowledge element can attach, and pre-effective-date conduct cannot supply the missing substantive predicate. The complaint's failure to allege any specific post-effective-date conduct is fatal to Count IV regardless of whatever background relevance pre-effective-date allegations may have. At minimum, the Court should strike those portions of Count IV alleging violations based on pre-October 21, 2024 conduct, or require Plaintiffs to plead with specificity the post-effective-date conduct on which Count IV depends.

### C. **<u>Plaintiffs' concession that Counts I through III do not seek monetary relief should be memorialized and given binding effect</u>.**

USA acknowledges that Counts I through III do not seek monetary relief and instead seek only injunctive relief under Section 5(a) of the FTC Act. This acknowledgment should be memorialized in the Court's ruling and Plaintiffs should be bound by it. Defendants do not treat this concession as inconsequential. The complaint's Prayer for Relief requests, *inter alia*, "monetary relief" without limiting those remedies to specific counts. Absent a clear ruling that monetary relief is unavailable under Counts I through III, Plaintiffs may later attempt to recover monetary damages under those counts notwithstanding their present representations. The Court should therefore enter an order confirming that Counts I through III are limited to injunctive

relief, thereby narrowing the scope of discovery and preventing future disputes over the availability of monetary remedies under those counts. It could also potentially assist in a settlement of this matter.

### D. The Prayer for Relief Is Impermissibly Vague and Fails to Provide Fair Notice of Each Plaintiff's Claims for Relief.

Plaintiffs contend that the Prayer for Relief provides sufficient notice when the complaint is "assessed as a whole." But the principle that a complaint must be read as a whole does not excuse a Prayer for Relief that, on its face, fails to delineate which Plaintiff seeks which remedy. The Prayer for Relief is presented as a single joint request, seeking remedies — including a "monetary judgment," civil penalties, and "disgorgement of ill-gotten monies" — without specifying which Plaintiff is entitled to which form of relief. With the sole exception of Paragraph D, which specifically identifies the Illinois Attorney General as the party seeking costs under 815 ILCS 505/10, the remaining paragraphs of the Prayer leave Defendants to guess whether the United States, Illinois, or both seek each enumerated remedy. For example, Paragraph B seeks "monetary relief" without specifying whether such relief is sought by the United States under the FTC Act or the GLBA, by Illinois under state law or the ICFA, or by both — and if both, under which statutory authority each Plaintiff proceeds. Similarly, the Prayer's request for "disgorgement of ill-gotten monies" does not identify which Plaintiff asserts entitlement to that remedy or under which count. Plaintiffs assert that the complaint "connects each specific relief to a specific Plaintiff via a specific category of claim," but that is precisely the problem: Defendants should not be required to reconstruct the Prayer for Relief by cross-referencing scattered allegations across multiple sections of a multi-count complaint. Rule 12(e) exists to address exactly this deficiency — where the pleading is so structured that the opposing party must piece together the relief sought from disparate portions of the complaint rather than discerning it from the Prayer itself. At minimum, the Court should require a more definite statement under Fed. R. Civ. P.

12(e) directing Plaintiffs to separately identify the relief sought by each Plaintiff under each count. Alternatively, to the extent the United States purports to seek relief available only to Illinois, or vice versa, those claims for relief should be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court enter an order dismissing Plaintiffs' claims for monetary relief and civil penalties under Counts I-III; dismiss Count V for failure to state a claim; dismiss Count IV for failure to state a claim or, in the alternative, strike any allegations relating to fake reviews prior to October 21, 2024 and/or order a more definite statement as to conduct, if any, occurring after October 21, 2024; order a more definite statement regarding the Prayer for Relief; and award such other and further relief as is just and proper.

B.E.S.T. GDR, LLC and YOSEF BERNATH

By:________________________

One of their attorneys

Lawrence M. Benjamin (6196417)
CROWELL & MORING LLP
300 N. LaSalle Dr. Suite 2500
Chicago, IL 60654
(312) 379-4296
lbenjamin@crowell.com

Motty Stone
8424 Skokie Blvd. # 200
Skokie, IL 60077
Office: (847) 933-0300
Fax: (312) 509-4937
mstone@windycitylawgroup.com
ARDC # 6297720

## CERTIFICATE OF SERVICE

Lawrence M. Benjamin, an attorney, hereby certifies that he caused a true and correct copy of **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS ALL OR PART OF PLAINTIFFS' COMPLAINT** to be served via the court's e-filing system and by e-mail on August 21, 2026.

| | |
|---|---|
| AMANDA PALMER<br>Office of the Illinois Attorney General<br>115 South LaSalle Street<br>Chicago, Illinois 60603<br>(872) 272-0815 (telephone)<br>(312) 814-2593 (facsímile)<br>amanda.palmer@ilag.gov | DALE LICHTENSTEIN<br>THOMAS P. JAMES<br>JANICE PARKER<br>Office of the Illinois Attorney General<br>115 South LaSalle Street<br>Chicago, Illinois 60603<br>(872) 272-0815 (telephone)<br>(312) 814-2593 (facsímile)<br>dale.lichtenstein@ilag.gov |
| THOMAS P. JAMES<br>JANICE PARKER<br>Office of the Illinois Attorney General<br>115 South LaSalle Street<br>Chicago, Illinois 60603<br>(872) 272-0815 (telephone)<br>(312) 814-2593 (facsímile)<br>thomas.james@ilag.gov | JANICE PARKER<br>Office of the Illinois Attorney General<br>115 South LaSalle Street<br>Chicago, Illinois 60603<br>(872) 272-0815 (telephone)<br>(312) 814-2593 (facsímile)<br>janice.parker@ilag.gov |
| CADESBY B. COOPER<br>Trial Attorneys<br>U.S. Department of Justice<br>Enforcement & Affirmative Litigation Branch<br>450 5th Street NW, Suite 6400-S<br>Washington, DC 20530<br>(202) 616-2376 (Nelson)<br>(202) 305-7032 (Cooper)<br>(202) 742-7112 (Trundle)<br>(202) 616-8962 (facsímile)<br>cadesby.b.cooper@usdoj.gov | COLIN W. TRUNDLE<br>Trial Attorneys<br>U.S. Department of Justice<br>Enforcement & Affirmative Litigation Branch<br>450 5th Street NW, Suite 6400-S<br>Washington, DC 20530<br>(202) 616-2376 (Nelson)<br>(202) 305-7032 (Cooper)<br>(202) 742-7112 (Trundle)<br>(202) 616-8962 (facsímile)<br>colin.trundle@usdoj.gov |
| JAMES T. NELSON<br>Senior Trial Attorney<br>U.S. Department of Justice<br>Enforcement & Affirmative Litigation Branch<br>450 5th Street NW, Suite 6400-S<br>Washington, DC 20530<br>(202) 616-2376 (Nelson)<br>(202) 305-7032 (Cooper)<br>(202) 742-7112 (Trundle)<br>(202) 616-8962 (facsímile)<br>james.nelson2@usdoj.gov | WILLIAM J. HODOR<br>Federal Trade Commission<br>Midwest Region<br>230 South Dearborn Street, Room 3030<br>Chicago, Illinois 60604<br>(312) 960-5592 (telephone, Hodor)<br>(312) 960-5608 (telephone, Dodge)<br>whodor@ftc.gov |
| | |

| | |
|---|---|
| KAREN D. DODGE<br>Federal Trade Commission<br>Midwest Region<br>230 South Dearborn Street, Room 3030<br>Chicago, Illinois 60604<br>(312) 960-5592 (telephone, Hodor)<br>(312) 960-5608 (telephone, Dodge)<br>kdodge@ftc.gov | |

By: ____________________

Attorney for B.E.S.T. GDR, LLC and
YOSEF BERNATH